[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 427.]

**GALLAGHER ET AL., APPELLANTS, *v*. CLEVELAND BROWNS FOOTBALL COMPANY ET AL., APPELLEES.**

**[Cite as *Gallagher v. Cleveland Browns Football Co.*, 1996-Ohio-320.]**

*Torts— Participants and spectators at sporting event are barred from bringing actions for injuries that arise out of the normal conduct of the game unless the conduct amounts to an intentional tort or reckless misconduct.*

————————————

A defendant who wishes to rely on the defense of primary assumption of risk must raise it before or during trial. Failure to raise primary assumption of risk before or during trial precludes the defendant from raising the defense for the first time in a motion for judgment notwithstanding the verdict.

————————————

(No. 94-835—Submitted September 13, 1995—Decided February 7, 1996.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 63311.

————————————

{¶ 1} Plaintiff-appellant Michael Gallagher, a sportscaster employed by WJET-TV in Erie, Pennsylvania, was assigned by the station to cover a professional football game between the Houston Oilers and Cleveland Browns at Cleveland Municipal Stadium on December 18, 1988. Appellant was operating a video camera on the sideline of the field late in the first half when the Oilers had the ball at the Browns' nineteen-yard line. The Oilers were moving toward the Browns' goal line, at the end of the field commonly known as "the Dawg Pound."

{¶ 2} Anticipating that the Oilers would attempt to score by throwing a pass into the end zone, appellant positioned himself and his video camera off the field of play, near the corner of the end zone. At that end of the field, the bleachers are close to the back of the end zone and a slope separates the playing field from the

spectators. It had snowed the night before the game, and although the snow had been removed from the field, the hill and the area between the hill and the end zone were still snow-covered. A line around the field to mark where media personnel should stand was covered by snow and so was not visible. After being reminded by a member of the stadium's security force that he was subject to a policy requiring all media personnel to kneel in this area to keep from obstructing spectators' views of the game, appellant knelt and prepared to capture the play on his video camera.

{¶ 3} The Oilers then attempted a pass into the corner of the end zone in front of where appellant was positioned. The pass was overthrown and came directly at appellant. An Oilers receiver and a Browns defender collided with appellant as they went for the ball. Appellant suffered extensive injuries to his jaw, neck and mouth.

{¶ 4} Appellant filed a complaint in the Cuyahoga County Common Pleas Court, naming as defendants the Cleveland Browns Football Company, Inc., the Cleveland Browns, Inc., the Cleveland Stadium Corporation (collectively referred to as appellees or as "the Browns"), and Andy Frain Services, Inc. ("Andy Frain"), a company hired to provide security at the stadium. The complaint was later amended to add appellant Gallagher's medical insurer, Northbrook Property and Casualty Insurance Company, as a plaintiff.

{¶ 5} In his complaint, appellant alleged that defendants required him to crouch or kneel in an unprotected area of the sidelines of the field, thereby making it difficult for him to avoid the oncoming players, and so causing his injuries. Appellant also alleged that defendants were negligent in failing to provide him with a safe place from which to film the game. In their answers, along with other defenses, all defendants asserted generally as affirmative defenses that appellant was contributorily negligent and that appellant assumed the risk of his injuries. Specifically, the Browns answered that "plaintiff Michael Gallagher assumed any risk of injury" without further elaboration.

**{¶ 6}** The case proceeded to be tried before a jury. At the close of evidence, the Browns and Andy Frain each moved for a directed verdict. The Browns premised their motion on the grounds that appellant was a licensee when he was injured, and that the Browns had not breached the duty of care owed to a licensee. Defendant Andy Frain's motion argued that Andy Frain owed no duty to Gallagher, and also that no evidence had been introduced to establish that the security guard who reminded appellant to kneel was Andy Frain's employee rather than one of the Browns' own employees. The trial court denied the Browns' motion, but granted a directed verdict for Andy Frain based on the failure of the evidence to support a finding that one of Andy Frain's employees was involved.

**{¶ 7}** The trial court instructed the jury on the duty of care owed to invitees, licensees and trespassers, and on the standards applicable to determining if a breach of duty occurred. The court also instructed that implied (secondary) assumption of risk could reduce appellant's recovery if the jury decided that appellees were negligent. Appellees did not request an instruction on primary assumption of risk, and none was given.

**{¶ 8}** The jury returned a verdict in appellant's favor for $800,000, and also in favor of appellant's insurer for $106,000. The jury determined that appellant was thirty-five percent responsible for his own injuries due to contributory negligence/implied assumption of risk. Under comparative fault principles, the recoveries were reduced accordingly.

**{¶ 9}** After the trial court entered judgment on the verdict, appellees moved for judgment notwithstanding the verdict, or in the alternative for a new trial. At this point, for the first time, appellees urged that they owed no duty to appellant, so that any judgment against them was barred by the doctrine of primary assumption of risk. The trial court denied the motion.

**{¶ 10}** The sole assignment of error on appeal was that the trial court had erred in denying appellees' motion for judgment notwithstanding the verdict. The

Court of Appeals for Cuyahoga County, in a split decision, reversed the judgment of the trial court and held for appellees on their primary assumption of risk argument. The dissenting judge believed that appellees had waived the defense of primary assumption of risk by failing to raise it until after the jury returned its verdict, and would have affirmed appellant's award.

{¶ 11} The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Joel Levin, Maurice L. Heller* and *Kathleen J. St. John*, for appellants.

*Isaac, Brant, Ledman & Teetor, Charles E. Brant, Donald L. Anspaugh* and *David E. Ballard; Kitche, Deery & Barnhouse* and *Eugene B. Meador*, for appellees.

*Thomas H. Bainbridge*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

———————————

**ALICE ROBIE RESNICK, J.**

{¶ 12} The issue presented is whether a defendant who makes no attempt to introduce primary assumption of risk as an issue before or during a trial, but instead waits until after the jury returns a verdict in favor of the plaintiff, is precluded from relying on primary assumption of risk as a complete defense in a motion for judgment notwithstanding the verdict. For the reasons that follow, we determine that appellees waived primary assumption of risk as a defense because they failed to raise it in a timely manner. By failing to take advantage of numerous opportunities to inject the defense of primary assumption of risk into the trial before the case went to the jury, appellees made the tactical determination to rely on the semantically related but distinctly separate defense of implied (secondary) assumption of risk. Having waived the defense of primary assumption of risk,

appellees were precluded from raising it in a motion for judgment notwithstanding the verdict. We reverse the judgment of the court of appeals, and reinstate the judgment of the trial court.[1]

{¶ 13} To comprehend why appellees clearly waived primary assumption of risk as a defense, it is necessary first to trace the development of two types of assumption of risk recognized by this court's opinion in *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780. *Anderson* held that the General Assembly's then-recent enactment of R.C. 2315.19 (the comparative negligence statute) required that the defenses of implied assumption of risk and contributory negligence be merged, so that a plaintiff who impliedly assumed the risk of a particular action was no longer totally barred from recovery due to that assumption.[2] The court thus found that implied assumption of risk could limit a plaintiff's recovery in the same way that contributory negligence limited recovery under R.C. 2315.19. In explaining its reasoning, the *Anderson* court cogently observed:

"Under the prior cases, the overlap in these doctrines [implied assumption of risk and contributory negligence] posed no problems because in practice it did not matter whether the plaintiff's conduct was denominated as assumption of risk or contributory negligence, since both stood as absolute bars to a plaintiff's

---

1. Appellant did not specifically argue that appellees waived the defense of primary assumption of risk in his brief in opposition to defendants' motion for judgment notwithstanding the verdict filed in the trial court after the jury had returned its verdict. Appellant also did not specifically argue that appellees waived the defense in his answer brief filed in the court of appeals. However, appellant in both briefs strenuously urged that a "no duty" analysis was inapplicable, based on the facts of the case and the way the assumption of risk issues developed before and at trial. Appellant repeatedly stressed that this was an implied assumption of risk case. The record shows that the reason this was an implied assumption of risk case is that appellees *chose* to try it as such a case, and so waived a primary assumption of risk defense.

2. Current R.C. 2315.19 has been amended to reflect the holding of *Anderson* that implied assumption of risk and contributory negligence merge for purposes of that statute. See Section 3(C), Am.Sub.H.B. No. 1, 142 Ohio Laws, Part I, 1661, 1752.

recovery. However, now, under R.C. 2315.19, if a plaintiff's conduct constitutes both contributory negligence and assumption of risk, continued adherence to the differentiation of the doctrines can lead to the anomalous situation where a defendant can circumvent the comparative negligence statute entirely by asserting the assumption of risk defense alone." 6 Ohio St.3d at 113, 6 OBR at 173, 451 N.E.2d at 783.

{¶ 14} Although the *Anderson* court merged implied assumption of risk with contributory negligence, the court found that two other types of assumption of risk did *not* merge with contributory negligence—express (*e.g.*, contractual) assumption of risk and primary ("no duty") assumption of risk. *Anderson's* statement that primary assumption of risk does not merge with contributory negligence is of critical importance to our discussion here because when a plaintiff is found to have made a primary assumption of risk in a particular situation, that plaintiff is totally barred from recovery, as a matter of law, just as he or she would have been before *Anderson*. The net result of *Anderson's* differentiation between primary and implied assumption of risk is that now it is of utmost importance which type of assumption of the risk is put forth as a defense. In fact, after *Anderson*, these two defenses are so distinct that it is misleading that each continues to bear the title "assumption of risk," as if the two were interrelated concepts. Due to the confusion occasioned by continuing usage of "assumption of risk," many commentators have advocated abolishment of the term. "[T]he concept of assuming the risk is purely duplicative of other more widely understood concepts, such as scope of duty or contributory negligence. ***It adds nothing to modern law except confusion." 4 Harper, James & Gray, Law of Torts (2 Ed.1986) 259, Section 21.8. However, despite this confusion, Ohio continues to recognize the term and its accompanying variations.

{¶ 15} Primary assumption of risk is a defense of extraordinary strength. Based on the distinction drawn in *Anderson* between implied assumption of risk

and primary assumption of risk, and the doctrine that a plaintiff who primarily assumes the risk of a particular action is barred from recovery as a matter of law, it becomes readily apparent that primary assumption of risk differs conceptually from the affirmative defenses that are typically interposed in a negligence case. An affirmative defense in a negligence case typically is the equivalent of asserting that even assuming that the plaintiff has made a prima facie case of negligence, the plaintiff cannot recover. A primary assumption of risk defense is different because a defendant who asserts this defense asserts that no duty whatsoever is owed to the plaintiff. See Prosser & Keeton, Law of Torts (5 Ed.1984) 496-497, Section 68 (Primary assumption of risk "is really a principle of no duty, or no negligence, and so denies the existence of any underlying cause of action."). Because a successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law, the defense prevents the plaintiff from even making a prima facie case.

{¶ 16} Because of the great impact a ruling in favor of a defendant on primary assumption of risk grounds carries, a trial court must proceed with caution when contemplating whether primary assumption of risk completely bars a plaintiff's recovery. Indeed, in *Cincinnati Base Ball Club Co. v. Eno* (1925), 112 Ohio St. 175, 147 N.E. 86, the case cited in *Anderson* as support for the survival of the concept of primary assumption of risk, the doctrine itself was inapplicable, as plaintiff there was a spectator injured by a ball hit by a player who was practicing *very near the stands*. The *Eno* court intimated in dicta that primary assumption of risk would have applied if plaintiff had been struck by a ball hit into the stands during the normal course of a game: "[I]t is common knowledge that in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the lines of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof." *Eno*, 112 Ohio St. at 180-181, 147 N.E. at 87. *Eno* demonstrates that only those risks directly associated

with the activity in question are within the scope of primary assumption of risk, so that no jury question would arise when an injury resulting from such a direct risk is at issue, meaning that no duty was owed by the defendant to protect the plaintiff from that specific risk. In many situations, as in *Eno*, there will be attendant circumstances that raise questions of fact whether an injured party assumed the risk in a particular situation. In that case, the doctrine of implied assumption of risk, not primary assumption of risk, would be applicable.

{¶ 17} Appellees in their answer raised a generic claim of assumption of risk as an affirmative defense. From that alone, at that time in the litigation, it was not clear whether they intended to rely on primary assumption of risk, or on implied assumption of the risk, or possibly on both, as their theory of defense. By raising assumption of risk in their answer, appellees met the minimal Civ.R. 8(C) pleading requirement that "a party *shall* set forth affirmatively *** assumption of risk *** and any other matter constituting an avoidance or affirmative defense."[3] (Emphasis

---

3. An argument could be made that appellees waived a primary assumption of risk defense pursuant to Civ.R. 8(C) by never specifically raising it in any pleading. Implied assumption of risk assumes establishment of a prima facie case (including the duty element), and therefore is a traditional affirmative defense. However, primary assumption of risk is technically not an affirmative defense, as it directly attacks the duty element of a prima facie negligence case, rather than accepting the allegations of the complaint as true. See 4 Harper, James & Gray, Law of Torts (2 Ed.1986) 256, Section 21.7 ("[A]ssumption of risk in the primary sense does not, analytically, describe a defense at all. It is simply a left-handed way of describing a lack of duty."). Yet "it could be urged that a defendant who would escape the general rule requiring due care should plead and prove facts that bring him within an exception to it." *Id.* at 258, Section 21.7. Regardless of this ambiguity, we must acknowledge that Civ.R. 8(C) simply requires a party to put forth "assumption of risk" as an affirmative defense without taking into account the significant distinction between primary and secondary assumption of risk engendered by *Anderson'*s statement that primary assumption of risk does not merge with contributory negligence. Like the court of appeals majority, we therefore feel compelled to find that appellees met their minimal Civ.R. 8(C) burden by generically raising assumption of risk as an affirmative defense. Nevertheless, even assuming that the answer met the minimal Civ.R. 8(C) requirement, primary assumption of risk could still be waived if appellees did not timely inject it as an issue in the litigation.

The entire seemingly circular preceding discussion illustrates just some of the confusion associated with the term and concept of assumption of risk. It may be worthwhile to consider amending Civ.R. 8(C) to deal with the ambiguities, in what perhaps could be the first step toward eventual abolishment of the term. It is less confusing merely to say that a defendant owed no duty to a plaintiff, rather than to say that a plaintiff primarily assumed the risk of injury. It is less

added.) See *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 3-4, 12 OBR 1, 3, 465 N.E.2d 377, 379. Thus, this case can be distinguished from the more common waiver situation in which a defendant fails to raise a defense in the answer, also fails to amend the answer pursuant to Civ.R. 15(A), and further cannot obtain amendment to conform to the evidence under the "express or implied consent of the parties" provision of Civ.R. 15(B) because the issue was not developed at trial, *i.e.,* when it was not tried by the express or implied consent of the parties. See *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159; *Cooper v. Grace Baptist Church of Columbus, Ohio, Inc*. (1992), 81 Ohio App.3d 728, 735, 612 N.E.2d 357, 361. However, even though it can be found that appellees avoided a waiver by virtue of the generic statement in their answer that plaintiff's claim was barred by assumption of risk, appellees still had a responsibility to specifically raise primary assumption of risk sometime before the case went to the jury, and to put appellant and the court on notice through supporting arguments that primary assumption of risk would be an issue in the litigation.

{¶ 18} Because primary assumption of risk, when applicable, prevents a plaintiff from establishing the duty element of a negligence case and so entitles a defendant to judgment as a matter of law, it is an issue especially amenable to resolution pursuant to a motion for summary judgment. Yet appellees never moved for summary judgment or attempted in any other way to call primary assumption of risk to the trial court's attention prior to trial. In most cases, when a defendant potentially has a full and complete defense available that would defeat a plaintiff's prima facie negligence case, one would expect that defendant to raise that defense as soon as possible in an attempt to prevail without going to trial. Although there is no suggestion in Civ.R. 56 that a party who fails to make a motion for summary

confusing to say that a plaintiff was contributorily negligent, rather than to say that a plaintiff impliedly assumed the risk of injury.

judgment on a particular issue waives the right to raise the issue, judicial economy favors raising an issue on which the moving party claims entitlement to "judgment as a matter of law," Civ.R. 56(C), at the earliest practicable time. While appellees therefore did not waive primary assumption of risk by the mere failure to raise it through an argument that they owed no duty to plaintiff in a summary judgment motion, that failure further supports our ultimate conclusion.

{¶ 19} Besides our concerns with appellees' failure to make a motion for summary judgment on primary assumption of risk grounds, other developments at trial make it obvious that implied assumption of risk was the defense appellees chose to rely on, to the obvious exclusion of any primary assumption of risk defense. A close examination of the record makes manifest that appellees made absolutely no attempt to inject primary assumption of risk as an issue in this case until after the jury returned a verdict against them. The following observations illustrate that appellees waived primary assumption of risk as a defense because they failed to carry their burden of timely making "no duty" an issue:

- As alluded to above, appellees generically stated in their answers that appellant assumed the risk of the injuries. Although this avoided a Civ.R. 8(C) waiver of primary assumption of risk as a defense, it did not in any way specifically make appellees' lack of duty an issue in the case.

- Appellees conspicuously did not discuss primary assumption of risk at all in their trial brief filed just two weeks prior to trial. Rather, they discussed what duty of care they owed: whether a duty to an invitee, a licensee, or a trespasser. Thus, appellees conceded that they owed a duty to appellant, a position clearly inconsistent with primary assumption of risk, which involves no duty and which, if established, would have prevented appellant from making a prima facie negligence case.

- When appellees submitted proposed jury instructions with their trial brief, they did not request an instruction on primary assumption of risk. Likewise, when

appellees later proposed additional jury instructions, no primary assumption of risk instruction was requested. Obviously, appellees continued to concede that they owed a duty to appellant.

- When appellees moved for a directed verdict after the presentation of evidence at trial, their argument again focused on appellant's status, claiming that he was a licensee rather than an invitee, and they accordingly claimed that they owed him only a duty to refrain from willful and wanton conduct. Appellees never claimed then that they owed appellant no duty whatsoever, and at that time never mentioned primary assumption of risk.

- In closing arguments to the jury, appellees did not raise primary assumption of risk, and continued to advance their "licensee" argument, conceding that they owed a duty to appellant.

- After the trial judge instructed the jury, the judge gave counsel for appellees an opportunity to state any objections for the record. None of the instructions were on primary assumption of risk, and appellees' attorney stated that he had no objections. The case then went to the jury with appellees' never making "no duty" an issue.

{¶ 20} At this point in the trial, when the case went to the jury, appellees had clearly waived the right to raise primary assumption of risk as a defense. Because primary assumption of risk is a question of law for a court to decide, rather than for a jury, we detail many of the above considerations primarily to illustrate that appellees made the conscious choice, for whatever reason, to allow this case to go to the jury as it did. Appellees' waiver occurred due to their total failure to call primary assumption of risk to the attention of the trial judge until after the jury returned its verdict. We do not mean to imply that a primary assumption of risk defense could be raised solely through proposed jury instructions or during closing arguments to the jury. To the contrary, because appellees never made a primary assumption of risk argument, they put on no evidence to support application of that

defense, which is a legal question for the court. No jury instructions on primary assumption of risk could have been appropriate, even if appellees would have proposed them, as there was no evidence before the jury to support the issue. See *Murphy v. Carrollton Mfg. Co*. (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832.

{¶ 21} In the same way that primary assumption of risk, in that it is a question of law to be decided by the trial judge, is not appropriately raised when factual questions are presented to the jury to determine whether a defendant was negligent and a plaintiff contributorily negligent, primary assumption of risk is also not a defense particularly amenable to presentation in a motion for a directed verdict or in a motion for judgment notwithstanding the verdict. The same standard applies to resolve both of these motions. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338. That standard, found in Civ.R. 50(A)(4), is that the motion should be granted if, when the evidence is strongly construed in favor of the nonmoving party, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." This standard obviously presupposes that any questions of law have been previously resolved, and is concerned with questions of fact that are to be submitted to the jury (directed verdict motion) or have already been submitted to the jury (motion for judgment notwithstanding the verdict.) Inasmuch as the standard is concerned with what determination could be reached by reasonable minds *based upon the evidence presented*, these motions are not the proper way to resolve a question dependent upon a ruling by the trial court on a matter of law.

{¶ 22} For all the foregoing reasons, we hold that a defendant who wishes to rely on the defense of primary assumption of risk must raise it before or during trial. Failure to raise primary assumption of risk before or during trial precludes the defendant from raising the defense for the first time in a motion for judgment notwithstanding the verdict.

**{¶ 23}** For purposes here, the policy reason behind the requirement that a defendant has a responsibility to make primary assumption of risk an issue by calling it to the trial court's attention prior to the jury's reaching a verdict is obvious—it is a fundamental tenet of jury trial procedure that the judge decides questions of law, and the jury, as factfinder, then decides questions of fact. Our entire system of trial procedure is built around this basic proposition, which would be turned on its ear if we allowed the jury first to decide questions of fact, and then expected the trial court to rule on pure issues of law after the jury returns a verdict. We require the defendant to put forth alleged defenses, and arguments to support them, in order to define the issues in a case to put both the plaintiff and the trial court on notice of the particular defense to be at issue so that the litigation may be formulated and shaped. When the defendant interposes an avoidance or affirmative defense which appears to have merit, the defense frequently becomes an issue upon which the case may turn. Generally, the plaintiff must vigorously oppose the defense at the earliest opportunity. The idea that a defendant waives a defense he or she fails to raise is especially applicable when the defendant supposedly has available a defense that, if established, is of such extraordinary strength that it can prevent the plaintiff from making a prima facie negligence case. If a plaintiff is not put on notice of such a defense, he or she of course should not be expected to anticipate it, as the plaintiff cannot counter a defense that has never been introduced as an issue. Likewise, a trial judge is not required to anticipate the existence of a defense that is not raised. To require a trial court to grant a defendant judgment as a matter of law on an issue never timely raised would fly in the face of fundamental rules of our adversarial system of trial, which place specific responsibilities on parties involved in litigation to shape the course of the trial.

**{¶ 24}** Appellees did not in any way urge application of the defense of primary assumption of risk until after the jury had returned its verdict finding appellees to be negligent and appellant to have been thirty-five percent negligent

due to implied assumption of the risk and contributory negligence. Only after the jury returned the award against them did appellees raise primary assumption of risk in their motion for judgment nothwithstanding the verdict. At this time it was too late, as the primary assumption of risk defense had already been waived. The trial judge rightly denied the motion for judgment notwithstanding the verdict. The court of appeals majority was mistaken in finding that appellees' motion for judgment notwithstanding the verdict was sufficient to raise the issue of primary assumption of risk before the trial court, and to preserve the issue for appellate review. The argument based on primary assumption of risk was waived when appellees failed to raise it before the case went to the jury. To the extent that appellees argue on appeal that the trial court erred by not granting their motion for judgment notwithstanding the verdict, the failure to timely raise the issue before the trial court also waived the issue for appeal. See *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus (appellate court need not consider an error which a party could have called to the trial court's attention but did not); *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.* (1995), 73 Ohio St.3d 260, 271, 652 N.E.2d 952, 961 (litigant cannot procure a reversal of a judgment for an error for which the litigant was responsible).

{¶ 25} Appellees in essence argue that this case should have never gone to the jury, because appellant could not make a prima facie negligence case. However, as discussed above, appellees failed to raise the defense of primary assumption of risk until it was far too late. This case went to the jury in the way it did precisely *because* appellees made the tactical choice, for whatever reason, to rely on implied assumption of the risk as their defense, and not to rely on primary assumption of risk.[4] Appellees chose to focus the trial on the behavior of appellant, and claimed

---

4. The dissenting judge at the court of appeals discusses at length possible tactical advantages appellees may have gained by declining to raise a primary assumption of risk defense at trial. See *Gallagher v. Cleveland Browns Football Co.* (1994), 93 Ohio App.3d 449, 466-469, 638 N.E.2d

throughout that he had impliedly assumed the risk of his actions. Appellees could have also presented a "no duty" defense, as the theory of primary assumption of risk would require, but clearly did not. Only after the verdict was returned did appellees for the first time raise primary assumption of risk as a defense.

{¶ 26} In conclusion, it is apparent from the record here that appellees failed to raise a primary assumption of risk defense in a timely manner. We reverse the judgment of the court of appeals, and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., F.E. SWEENEY, PFEIFER and COOK, JJ., concur

DOUGLAS and WRIGHT, JJ., dissent.

-----------------------

-----------------------

1082, 1094-1096 (Nugent, J., dissenting). The dissenting judge also points out that defendant Andy Frain did request a jury instruction on primary assumption of risk, and also argued the defense in a trial brief. *Id.* at 465, 638 N.E.2d at 1093, fn. 1. Thus, unlike appellees, Andy Frain did attempt to inject the primary assumption of risk issue into the litigation.

**WRIGHT, J., dissenting.**

**{¶ 27}** Although I certainly favor judicial economy, I do not believe that it should control the disposition of a case when it needlessly trammels substantial justice. Such a result is even more troubling when it is rooted in a mischaracterization of a procedural issue. For these reasons and the supporting analysis which follows, I respectfully dissent.

**{¶ 28}** As the majority opinion acknowledges, the Browns did not waive primary assumption of risk ("PAR") at the pleading stage because the general reference to "assumption of risk" in their answer satisfied the requirements of Civ.R. 8. The majority opinion goes on, however, and recites a litany of factors, the accumulation of which allegedly amounts to waiver of PAR.

**{¶ 29}** I am at a loss to explain how any of these considerations force this conclusion when most, if not all, of the truly cogent reasons given by the court center on the jury's *fact-finding role*. As the majority states repeatedly, PAR is a *question of law*. As such, it is an issue which must be decided by the court. The absence of evidence presented to the jury, the lack of instructions on PAR, and the omission of any reference to this issue in closing arguments cannot possibly be construed as waiver in the context of this particular case.

**{¶ 30}** In addition, I am unaware of any rule that requires a legal issue to be raised on summary judgment before it is entitled to an airing on a motion for a directed verdict or judgment notwithstanding the verdict. Finally, Civ.R. 50(B) permits a motion for judgment notwithstanding the verdict regardless of whether a directed verdict premised on the same theory was requested. Accordingly, the circumstances in the proceedings below strike me as inapplicable to this court's determination of this matter.

**{¶ 31}** What *is* pertinent is that appellees raised the defense of assumption of risk in their answer. For whatever reason, they chose to reserve PAR until after

the jury returned its verdict.  Since I see no principled reason to forbid this sort of tactical calculation at the trial level, I would affirm the court of appeals' decision.

DOUGLAS, J., concurs in the foregoing dissenting opinion.

_____