OPINION
Plaintiff-appellant, Peter Vorum, appeals a decision of the Warren County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Joy Outdoor Education Center ("Center"), on appellant's tort claim arising from a rope swinging injury. We affirm.
On September 13, 1995, appellant, a professional engineer and a civilian employee at Wright Patterson Air Force Base, was attending a two day "team building" exercise at the Center. Attendance was required by appellant's employer, but the record does not indicate that appellant was required to participate in any particular exercise. As part of the series of activities, appellant participated in a rope swinging exercise known as "nitro crossing." The apparatus consisted of a length of rope strung between two trees eighteen feet apart at a height of fourteen and one half feet. A vertical "swing" rope was attached at the center of the horizontal rope. During the exercise, appellant and the other members of his team were to swing across an imaginary "pit" which was eight feet of level ground delineated by two barriers. Appellant received brief verbal warnings to keep his hands high on the rope. Appellant was the first member of his team to attempt the rope swing. Appellant's foot hit the ground prematurely and he sustained injury to his knee. The accident was captured on videotape.
Appellant sued the Center, asserting negligence. Following discovery, the Center moved for summary judgment. The Center argued that appellant's claim was barred by primary assumption of risk as appellant had "impliedly assumed the inherent risks associated with [rope swinging]." Appellant opposed the motion, submitting an affidavit by Dr. Ronald Huston, a mechanical engineer. Dr. Huston stated that, based upon appellant's description, the swing apparatus did not contain appropriate safety devices, i.e. a toe loop, and the swing rope was insufficiently high. Dr. Huston further stated that cushioning material should have been used in the pit. Appellant also submitted plans for designing a "nitro crossing" which indicated that the swing rope should be placed at a height of between twenty-five and thirty feet.
The trial court granted the Center's motion, finding that "slipping from the rope or having one's feet come into abrupt contact with the ground are ordinary foreseeable risks inherent in the activity of rope swinging." The court concluded that appellant had assumed the ordinary risks of rope swinging.
On appeal, appellant has raised one assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF [APPELLANT] IN GRANTING [THE CENTER'S] MOTION FOR SUMMARY JUDGMENT.
Summary judgment is appropriate where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds construing the evidence in the light most favorable to the nonmoving party could reach but one conclusion which is adverse to the nonmoving party. Civ.R. 56(C); Welco Ind., Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346. The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30; Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. If the moving party fails to satisfy this burden, the motion for summary judgment must be denied. Id. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
Our standard of review for summary judgment is the same as that of the trial court. We review summary judgment cases de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704,711. In applying the de novo standard, we review the trial court's decision independently and without deference to the trial court's determination. Id.
The Center moved for summary judgment based upon the doctrine of primary assumption of risk. In Anderson v. Ceccardi (1983),6 Ohio St.3d 110, the Ohio Supreme Court merged implied (or secondary) assumption of risk with contributory negligence in light of the comparative negligence statute. See R.C. 2315.19. In Anderson, the court noted that "assumption of the risk" had been defined as (1) consent or acquiescence in (2) an appreciated or known (3) risk. Id. at 112. However, the court specifically noted that express (contractual) assumption of the risk was not merged and that "primary" assumption of the risk would also survive as a separate defense to a negligence claim. The court noted that "primary assumption of the risk is typified by the baseball cases where a plaintiff is injured when a baseball is hit into the stands." Id. at 114.
In Gallagher v. Cleveland Browns (1996), 74 Ohio St.3d 427, the Ohio Supreme Court discussed the important distinction between implied assumption of risk (which had been merged into comparative negligence) and primary assumption of risk. The court noted that primary assumption of risk is a defense of "extraordinary strength" which is "really a principle of no duty, or no negligence, and so denies the existence of any underlying cause of action." Id. at 431 (citation omitted). The court noted that due to the great impact of such a ruling, a trial court should proceed with caution and only those risks "directly associated with the activity in question" should be determined to be within its scope. Id. at 432.
In primary assumption of risk, the focus is on the activity and its inherent risks, not on the plaintiff's conduct. Mima v. Akron (1986), 31 Ohio App.3d 124. Although the doctrine may be "typified" by cases where baseballs are hit into the stands, it is by no means limited to baseball cases, as appellant asserts. Primary assumption of risk has been applied to lifting an engine block (Williams v. Napa [Oct. 28, 1991], Warren App. No. CA91-03-028, unreported); playing war games with a BB gun (Schuster v. Gereke [Oct. 1, 1997], Lorain App. No. 96-006625, unreported); riding in a horse drawn wagon (Miskovic v. Tredway [Feb. 26, 1993], Fulton App. No. 92-0009, unreported); sliding on an amusement park slide (Dancer v. Allen County [Sept. 24, 1992], Allen App. No 1-91-91, unreported; and sliding into a base while playing softball (Harris v. Armco Steel Corp. [Aug. 18, 1994], Richland App. No. 94-28-02, unreported).
Although our research has revealed no previous cases dealing specifically with rope swinging, it is sufficiently analogous to certain of the above activities to warrant application of the doctrine. The analysis of the Fifth Appellate District in Harris v. Armco Steel Corp. (Aug. 18, 1994), Richland App. No. 94-28-02, is especially instructive. In Harris, the plaintiff was a forty-one year-old man who had never played softball and had not played baseball since junior high. His first time at bat for a bar-sponsored softball team, the plaintiff slid into second base and broke his leg. The base was stationary, although the plaintiff had "assumed the bases were breakaway." Id. at 3. He sued the owners of the field, alleging negligence for failing to provide breakaway bases and for failing to warn that the bases were not breakaway. The defendant's summary judgment motion was granted. The Fifth District affirmed, finding that it was "common knowledge that one can be injured when sliding into a base." Id. at 4. The evidence demonstrated that "the risk of sliding is reduced, but not eliminated, by the use of breakaway bases." Id. Therefore, the defendant owed the plaintiff no duty of care based upon the doctrine of primary assumption of risk.
Similarly, the risk of falling from a rope, or having one's feet make premature contact with the ground without actually falling, are risks which are inherent in the activity of rope swinging. Although the risks can be reduced by warnings or, presumably, other safety precautions, the risks cannot be eliminated. Therefore, primary assumption of the risk was a complete bar to appellant's claim and summary judgment was appropriately granted.
Appellant also argues that the trial court erred in finding his participation in the "nitro crossing" was voluntary. After a thorough review of the record, we find that the trial court's conclusion was correct. In an opinion with divided reasoning in Cremeans v. Wilmar Henderson Manufacturing Co. (1991),57 Ohio St.3d 145, the Ohio Supreme Court stated in its syllabus that:
 An employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal performance of his or her required job duties and responsibilities.
 Appellant claims that this statement means that a plaintiff who is required to encounter a risk by the terms of his employment does not voluntarily assume such a risk. First, only two justices concurred in the broadest reading of this statement. See McFarland v. Bruno Machinery Corporation (Sept. 14, 1992), Warren App. No. CA91-11-089, unreported. Second, Cremeans involved strict products liability and does not necessarily apply in negligence. See Carey v. AK Steel Corp. (July 13, 1998), Butler App. No. CA98-02-022, unreported. Moreover, appellant's injury did not occur "in the normal performance of [appellant's] required job duties and responsibilities." Cremeans, 57 Ohio St.3d 145, syllabus. Appellant's attendance at the two day series of team building exercises was required by his employer; however, the record reveals no evidence[1]
that appellant's employer or the Center required appellant to participate in any particular exercise, including "nitro crossing."
Therefore, appellant's assignment of error is overruled and the judgment of the trial court is affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] Appellant points to materials from his employer indicating that nonparticipation was an "issue" to be faced during team-building exercises. This does not amount to coercion.