OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this Court. Appellant Debra Cappelli, appeals the decision of the Mahoning County Court of Common Pleas granting summary judgment in favor of Appellees, Youngstown Area Community Action Council and YACAC Home Energy Service. Because genuine issues of fact remain regarding whether or not Cappelli assumed all risk when attempting to relight her pilot-light on her furnace, the trial court erred when granting summary judgment in favor of YACAC.
 {¶ 2} On December 18, 2003, Cappelli filed a complaint alleging that YACAC negligently performed electric and heating work at her home. She claims that as a result of this negligence, she suffered injury when she attempted to relight a pilot light on her furnace. After completion of discovery, the YACAC filed a motion for summary judgment asserting the defense of assumption of the risk. The motion claimed that on January 10, 2003, YACAC performed an initial inspection on Cappelli's home to determine whether weatherization services could be effectively provided to Cappelli through the Home Weatherization Assistance Program.
 {¶ 3} YACAC claims that during that initial inspection, a hole had to be cut in Cappelli's bathroom wall to access the furnace. Once the hole was cut, it was determined that the furnace had a cracked heat exchanger that made operation of the furnace unsafe. YACAC claims that this unsafe condition predated the inspection and was not aggravated by their inspection. The furnace was shut down by YACAC. Cappelli was then asked to sign an acknowledgment stating that the furnace was shut down due to a problem and that if she chose to restart the furnace it would be at her own risk.
 {¶ 4} Sometime after the inspection, Cappelli had her friend relight the pilot-light multiple times for her without incident. However, on February 3, 2003, Cappelli attempted to relight the pilot-light herself with a propane fueled barbecue lighter. Cappelli was seriously burned when the furnace flashed back. YACAC claims in their motion for summary judgment that they are in no way responsible for these injuries as Cappelli assumed the risk when she attempted to relight the pilot light.
 {¶ 5} On September 7, 2005, the trial court granted YACAC's motion for summary judgment finding that Cappelli "clearly assumed all risk for her attempts to relight the pilot-light on her furnace thus baring (sic) the claim herein."
 {¶ 6} As her sole assignment of error, Cappelli states:
 {¶ 7} "The trial court erred by granting summary judgment in favor of the Defendant-Appellee, Youngstown Area Community Action Council, et al."
 {¶ 8} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390. A fact is material when it affects the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel,Inc. (1999), 135 Ohio App.3d 301, 304.
 {¶ 9} When moving for summary judgment, a party must produce some facts that suggest that a reasonable fact-finder could rule in her favor. Brewer v. Cleveland Bd. of Edn. (1997),122 Ohio App.3d 378, 386. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt
(1996), 75 Ohio St.3d 280, 296. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 {¶ 10} Here, the YACAC claims that they are entitled to summary judgment based on Cappelli's alleged assumption of the risk. In response, Cappelli maintains that a comparative negligence analysis should have been applied to this case. Because that type of analysis requires a fact based determination, Cappelli argues that this case should have been sent to a jury. Before addressing these competing claims, a brief discussion of the two types of assumption of the risk, primary or express and secondary or implied, is required to determine which law should be applied to the facts.
 Primary/Express Assumption of Risk {¶ 11} Primary assumption of the risk is the doctrine that a defendant has no duty to protect against certain risks that are so inherent in an activity that those risks cannot be eliminated. See, e.g., Gallagher v. Cleveland Browns Football Co. (1996),74 Ohio St.3d 427, 431, citing Prosser Keeton, Law of Torts (5 Ed. 1984) 496-497, Section 68. It is based on the fiction that the plaintiff has "tacitly consented" to the risk. Collier v.Northland Swim Club (1987), 35 Ohio App.3d 35, 37. The rationale for the doctrine is that "`[t]he law simply deems certain risks as accepted by plaintiff regardless of actual knowledge or consent.'" Gentry v. Craycraft, 101 Ohio St.3d 141,2004-Ohio-379, 802 N.E.2d 1116, at ¶ 12.
 {¶ 12} A defendant may invoke the doctrine of primary assumption of the risk to completely bar a plaintiff's negligence claim when the plaintiff, by contract or otherwise, expressly agrees to accept a risk of harm arising from the defendant's negligent or reckless conduct. Gallagher,74 Ohio St.3d at 431-32, Restatement of the Law (Second), Torts, Section 496B. A plaintiff who has made a primary or express assumption of risk is totally barred from recovery. Id. Primary assumption of the risk will apply to bar a plaintiff's claim when the risks involved in the activity are so directly associated with that activity so as to be inherent in it. Sproles v. Simpson Fence Co. (1994),99 Ohio App.3d 72, 78; see, also, Whisman v. Gator Invest.Properties, Inc. (2002), 149 Ohio App.3d 225, 236; Ferguson v.Cincinnati Gas Elec. Co. (1990), 69 Ohio App.3d 460, 462.
 {¶ 13} The doctrine applies when the activity undertaken involves such obvious and unavoidable risks that no duty of care attaches as a matter of law. See Gallagher,74 Ohio St.3d at 432, (stating that primary assumption of the risk applies when "the activity undertaken involves such obvious and unavoidable risks that no duty of care is said to attach); Holmes v. Health Tennis Corp. of Am. (1995), 103 Ohio App.3d 364. A plaintiff who reasonably chooses to proceed in the face of a known risk is deemed to have relieved the defendant of any duty to protect him. See Siglow v. Smart (1987), 43 Ohio App.3d 55.
 {¶ 14} Here, the parties' main dispute is whether Cappelli appreciated the risk of relighting the pilot-light. Although Cappelli admits to signing the acknowledgement dated January 10, 2003 that states the furnace was shut down and that she would be taking full responsibility should she decide to turn it back on, she claims that she was never told not to relight the furnace. Although this may sound like a distinction without a difference, we conclude that attempting to relight a pilot light is not precisely the same thing as attempting to restart a furnace, especially given Cappelli's testimony that the pilot light was lit and the furnace was running when YACAC's employee left her home.
 {¶ 15} As such, it would appear that the signed acknowledgment which states that Cappelli assumes all responsibility if she should decide to turn her furnace back on would not create express assumption of the risk for her attempting to relight the pilot light. We must now decide, however, whether Cappelli's decision to relight the pilot light could be considered an implicit assumption of the risk.
 Secondary/Implied Assumption of Risk {¶ 16} In contrast to primary assumption of the risk, a defendant may invoke the doctrine of secondary or implied assumption of the risk when the plaintiff consents to or acquiesces in an appreciated, known, or obvious risk to the plaintiff's safety. See Wever v. Hicks (1967),11 Ohio St.2d 230, paragraph one of the syllabus; Bundschu v. Naffah (2002),147 Ohio App.3d 105, 112-13. Secondary or implied assumption of the risk exists when a plaintiff, who fully understands the risk of harm to himself, nevertheless voluntarily chooses to subject himself to it, under circumstances that manifest his willingness to accept the risk. See Benjamin v. Deffet Rentals (1981),66 Ohio St.2d 86, 89; Restatement of the Law (Second), Torts, Section 496C. In implied assumption of risk cases, the defendant owes the plaintiff a duty, but because the plaintiff knew of the danger involved and acquiesced to it, the plaintiff's claim may be barred under comparative negligence principles. Anderson,6 Ohio St.3d at 113.
 {¶ 17} Under R.C. 2315.19, the comparative negligence statute, the defense of implied assumption of risk merged with the defense of contributory negligence. Anderson, paragraph one of the syllabus. Because R.C. 2315.19 requires apportionment of the relative degrees of fault between plaintiff and defendant, questions concerning implied assumption of risk are generally for the jury to determine, especially when there is conflicting evidence as to plaintiff's contributory negligence. See Collierv. Northland Swim Club (1987), 35 Ohio App.3d 35, 39. However, when no dispute exists as to any material fact and when "`the plaintiff's negligence was so extreme as a matter of law that no reasonable person could conclude that plaintiff was entitled to recover" is the granting of summary judgment appropriate.'"Brady Fray v. Toledo Edison Co., Lucas App. No. L0-2-1260, 2003-Ohio-3422 (quoting Collier, 35 Ohio App.3d at 39,518 N.E.2d 1226).
 {¶ 18} Thus, in considering whether summary judgment was proper given the comparative negligence standard, we must resolve first whether Cappelli fully understood the risk of harm to herself, but nevertheless voluntarily chose to subject herself to it. Second, we must resolve whether Cappelli's negligence was "so extreme as a matter of law that no reasonable person could conclude that plaintiff was entitled to recover".
 {¶ 19} We find it significant that in her deposition Cappelli claims multiple times that when the YACAC people left her house, the pilot light was lit and the furnace was operating. Cappelli further claims that since they cut the hole in her bathroom wall, the draft kept putting out the pilot light. She claims that it went out multiple times after the inspection and her friend Donald Pratt had to keep coming over to relight it. The last time that the pilot light went out, she couldn't get a hold of Pratt so she attempted to relight it herself with a barbecue lighter. She admits that she had never done it before and that she hadn't read any instructions on how to do it. Her attempt resulted in her being burnt when flames shot back at her.
 {¶ 20} Cappelli now states that she was never told not to relight the pilot light. She further claims under oath that at no time did she know that she would be in any danger if attempting to relight the pilot light and she could not assume the risk of relighting the pilot light as she was unaware of any risk involved.
 {¶ 21} In contrast to this testimony, YACAC has provided the affidavit of Dick Allison, the employee who inspected Cappelli's home on January 10, 2003. Allison claims that upon inspection of the furnace, he discovered a cracked heat exchange that pre-existed the inspection. Allison claims that he informed Cappelli that operation of the furnace would be unsafe. He then claims that he shut down the gas and the electric power to the furnace and had Cappelli sign an acknowledgment "documenting that (a) she had been informed of the furnace problem, (b) that the unit had been turned off, and (c) that she was accepting full responsibility should she turn the furnace back on."
 {¶ 22} The two accounts of what happened on January 10, 2003 vary greatly. If what Cappelli says is believed, then it would be hard to say that she was grossly negligent for trying to relight a pilot light, especially if the furnace was up and running when YACAC left her home after the inspection. Accordingly, this matter is better left for a jury to decide which party is negligent for what portion of this claim.
 Proximate Cause {¶ 23} However, this does not conclude our analysis as YACAC further claims that even if Cappelli did not assume the risk, Cappelli has failed to explain how YACAC would be liable for her damages as they were not the proximate cause of her injury. Cappelli responds to this claim by asserting that prior to the inspection done by YACAC, she never had any problems with her furnace and the pilot light had never gone out. Cappelli claims that YACAC cut out a large hole in her wall and never replaced the board. Cappelli claims that if it weren't for the hole in the wall made by YACAC, she never would have had to relight her pilot light. Cappelli supports this claim with sworn testimony from her expert Johnny Naples who states in his affidavit:
 {¶ 24} "Defendant's employees, by cutting a hole in the wall, as related to me, without replacing the hole in the wall, within reasonable scientific certainty, caused her pilot light to go out and breaching Defendant's duty of care in dealing with Plaintiff's furnace."
 {¶ 25} In their reply brief, YACAC attacks the conclusion of Cappelli's purported expert claiming that it is not based on personal knowledge nor does he give any basis for his scientific conclusion. Even if YACAC is correct in its assertion that Naples' affidavit should not be considered in our analysis, the error would be harmless as Cappelli would be under no burden to submit the testimony of an expert to draw the conclusion that the hole cut in the wall next to her pilot light more than likely caused the pilot light to go out. It only makes sense that if Cappelli's testimony is believed that she had no problems with the pilot light in the eight previous years she lived in the home and then immediately after the hole is cut in the wall she experiences immediate multiple problems, the hole is probably to blame. Because this is within the realm of a layman's understanding, an expert opinion would not be needed in this case. See Evid.R. 701 and Evid.R. 702.
 {¶ 26} We conclude that a reasonable jury could find that by leaving the pilot light exposed, YACAC was the proximate cause of Cappelli's injuries. The trial court erred in granting summary judgment on the basis of proximate cause.
 {¶ 27} For the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded for further proceedings.
Vukovich, J., concurs.
Waite, J., concurs.