OPINION *Page 2 
{¶ 1} Appellant, Jane Warga, appeals the decision of the Mahoning County Court of Common Pleas entering summary judgment in favor of Appellees, Palisades Baseball, Mahoning Valley Scrappers, and unidentified team players in this negligence action. During a Scrappers' game at Eastwood Field in Niles, Ohio on July 20, 2004, Appellant was struck by a baseball while she was standing at the end of a walkway in the park, which overlooks a picnic area and a parking lot behind the bleachers. In a judgment entry time-stamped January 18, 2008, the trial court concluded that Appellant could not establish a prima facie case of negligence because she, "assumed the risks inherent in attending the game of baseball." (1/18/08 J.E., p. 1.)
 {¶ 2} Appellant contends that the primary assumption of the risk doctrine does not apply to her because she was not seated in the stands when she was hit by the baseball. Appellant argues that the facts of this case are plainly distinguishable from the body of Ohio case law cited by Appellees, which stands for the proposition that a patron at a baseball game who chooses to sit in the unscreened portion of the grandstand assumes the risk of injury inherent in attending a baseball game. See, e.g. Rees v. Cleveland Indians Baseball Co. Inc., 8th Dist. No. 84183, 2004-Ohio-6112.
 {¶ 3} In fact, a patron at a baseball game in Ohio must show special circumstances that raise a question of fact as to whether the patron assumed the risk *Page 3 
inherent in attending a baseball game. Because Appellant has failed to demonstrate any special circumstance, the judgment of the trial court is affirmed.
 Standard of Review {¶ 4} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court as set forth in Civ. R. 56(C). Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. When a court considers a motion for summary judgment the facts must be taken in the light most favorable to the non-moving party. Id.
 {¶ 5} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party'sclaim." (Emphasis in original.) Dresher v. Burt (1996),75 Ohio St.3d 280, 296, 662 N.E.2d 264. The nonmoving party has the reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. Id. at 293, 662 N.E.2d 264. In other words, the nonmoving party must produce some evidence *Page 4 
that suggests that a reasonable factfinder could rule in that party's favor. Brewer v. Cleveland Bd. of Edn. (1997), 122 Ohio App.3d 378, 386,701 N.E.2d 1023.
 Assignment of Error {¶ 6} "THE TRIAL COURT ERRED IN FINDING THAT THE PLAINTIFF ASSUMED THE RISKS INHERENT IN ATTENDING THE GAME OF BASEBALL AND ACCORDINGLY GRANTING SUMMARY JUDGMENT."
 {¶ 7} To maintain an action for negligence in Ohio, a plaintiff has the burden of establishing by a preponderance of the evidence that: (1) the defendant owed plaintiff a duty of care; (2) a breach of that duty; and (3) injury proximately caused by the breach. Menifee v. Ohio WeldingProducts, Inc. (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707. When a defendant shows, however, that the plaintiff assumed the risk of injury through participating in an inherently dangerous activity, this defeats the existence of a duty of care. See Gallagher v. Cleveland BrownsFootball Co. (1996), 74 Ohio St.3d 427, 431, 659 N.E.2d 1232 ("[A] plaintiff who primarily assumes the risk of a particular action is barred from recovery as a matter of law."); see, also, Prosser Keeton, Law of Torts (5 Ed. 1984) 496-497, Section 68.
 {¶ 8} Three different variations of the common law affirmative defense of assumption of risk are recognized in Ohio: express, primary, and secondary/implied. See, e.g., Gentry v. Craycraft, 101 Ohio St.3d 141,2004-Ohio-379, 802 N.E.2d 1116, at ¶ 11; Anderson v. Ceccardi (1983),6 Ohio St.3d 110, 114, 451 N.E.2d 780. Primary assumption of risk which relieves the defendant of the duty of care, and *Page 5 
defeats the plaintiffs prima facie negligence case, has historically been applied in cases involving sporting events. Id. at 114.
 {¶ 9} In the watershed case of Cincinnati Baseball Club Co. v.Eno (1925), 112 Ohio St. 175, 147 N.E. 86, the Supreme Court of Ohio analyzed a number of cases decided in other states involving injuries resulting from baseballs that traveled into the bleachers during the game. The Supreme Court acknowledged that baseball is an inherently dangerous activity, and that the spectator is in the best position to protect him or herself from injury at a baseball game:
 {¶ 10} "The consensus of the above opinions is to the effect that it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the lines of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof. This theory is fortified by the fact that such spectators can watch the ball and can thus usually avoid being struck when a ball is directed toward them.
 {¶ 11} "It is the general rule, also, so far as screening the grand stand is concerned, that due care on the part of the management does not require all of the spectators to be screened in; that the management performs its duty toward the spectators when it provides screened seats in the grand stand and gives spectators the opportunity of occupying them." Id. at 180-181, 147 N.E. 86.
 {¶ 12} However, unlike the spectators in the cases analyzed by the Court, the spectator in Eno was injured during the intermission of a double-header. The *Page 6 
baseball that struck Eno was hit by a player practicing near the unscreened portion of the grandstand.
 {¶ 13} As a consequence, the Ohio Supreme Court concluded that the facts in Eno presented a materially different situation from the general rule, and there was a question of fact whether the stadium owner performed its duty when it allowed players to practice in close proximity to the grandstand during an intermission when the scheduled games were not being played. Id. at 182-183.
 {¶ 14} The Ohio Supreme Court revisited the Eno case in 1996 inGallagher, supra. The Gallagher Court held that a defendant may not assert primary assumption of the risk for the first time on a motion notwithstanding the verdict. In reaching that conclusion, the Supreme Court observed that primary assumption of the risk is a defense of "extraordinary strength," Id. at 431, 659 N.E.2d 1232, and, "a trial court must proceed with caution when contemplating whether primary assumption of the risk completely bars a plaintiffs recovery." Id. at 432, 659 N.E.2d 1232.
 {¶ 15} The Court distinguished primary assumption of the risk and implied assumption of the risk as follows:
 {¶ 16} "Eno demonstrates that only those risks directly associated with the activity in question are within the scope of primary assumption of the risk, so that no jury question would arise when an injury resulting from such a direct risk is at issue, meaning that no duty was owed by the defendant to protect the plaintiff from that specific risk. In many situations, as in Eno, there will be attendant circumstances that *Page 7 
raise questions of fact whether an injured party assumed the risk in a particular situation. In that case, the doctrine of implied assumption of the risk, not primary assumption of the risk, would be applicable." Id.
 {¶ 17} Consequently, we must determine whether being struck by a baseball while standing at the end of an open walkway leading to the rear of the stadium during a baseball game is a risk directly associated with that sport.
 {¶ 18} First, it is important to note that Appellees provide several safety precautions for spectators. According to the affidavit of David Smith, the Scrappers' general manager, a protective netting/screen runs from dugout to dugout covering seven sections of seating. (Smith Aff., ¶ 4.) There are at least thirteen signs throughout the ballpark warning visitors that objects leave the field of play. (Smith Aff., ¶ 5.) In addition, each ticket stub provides a warning to fans to be aware of their surroundings during the game. (Smith Aff., ¶ 6.) Finally, there is a public address announcement warning spectators to be aware of objects leaving the playing field. (Smith Aff., ¶ 7.)
 {¶ 19} To establish her prima facie case of negligence, Appellant relies on the exception to the general rule carved out in Eno,supra, as well as on two cases decided by courts outside of this state,Maisonave v. Newark Bears Professional Baseball Club, Inc. (2005),185 N.J. 70, 81 A.2d 700, and Jones v. Three Rivers Mgmt. Corp. (1978), 483 Pa. 75, 394 A.2d 546.
 {¶ 20} The plaintiff in Maisonave was struck in the face by a baseball while he was in the mezzanine of Riverfront Stadium. The mezzanine is an open walking area *Page 8 
exposed on one side to the baseball field. Vendors sell food and beverages on that level, and restrooms are located there. At the time of the incident, the stadium used movable vending carts for the sale of beverages because construction of the stadium had not yet been completed, and the built-in concession stands were not operational. The carts dotted the mezzanine along both the first and third base lines on the field-side of the mezzanine. The vendors stood with their backs to the diamond while the patrons faced it. Maisonave at 74-75, 81 A.2d 700.
 {¶ 21} In Maisonave, the New Jersey Supreme Court limited the scope of the "limited duty" rule, which states that an operator of a sports venue has a duty solely to provide a protected area for spectators who choose not to be exposed to the hazards commonly associated with the sporting events they attend. Id. at 77, 81 A.2d 700. In fashioning an exception to the "limited duty" rule, the Court concluded that, "public policy and fairness require application of traditional negligence principles in all other areas of the stadium, including, but not limited to, concourses and mezzanine areas." Id. at 74, 81 A.2d 700.
 {¶ 22} However, to the extent that Maisonave created two different types of duties regarding objects leaving the field of play based solely on the spectator's location in the ball park, it was rejected legislatively and superseded by the New Jersey Baseball Spectator Safety Act of 2006, N.J.S.A. 2A:53A-43 to-48. See Sciarrotta v. GlobalSpectrum (2008), 194 N.J. 345, 355, n. 6, 944 A2d 630.
 {¶ 23} As a consequence, Appellant's legal argument rests solely on the Pennsylvania Supreme Court's holding in Jones, supra. InJones, a ballpark patron *Page 9 
who was hit in the eye by a ball during batting practice while he was standing in an interior walkway in the stadium's outer concourse filed a negligence action against the ballpark. Id. at 551-552, 394 A.2d 546.
 {¶ 24} Although Jones was a case of first impression in Pennsylvania involving a baseball stadium's liability for damages incurred by a patron who was struck by a batted ball, the Court acknowledged the well-settled principle that a ballpark patron knowingly accepts the reasonable risks inherent in and incident to the game. Id. at 549, n. 5,394 A.2d 546.
 {¶ 25} However, contrary to the general rule, the Court concluded that the owner of the ballpark had a duty to protect its patrons due to the specific architectural features of the stadium. The Court's decision was based upon open archways that forced fans to use unprotected areas to arrive at the game, which the Court concluded were unique, created a risk that was not an inherent feature of the spectator sport of baseball, and were not compelled by or associated with the manner in which baseball is usually played or viewed. Id. at 551-552,394 A.2d 546.
 {¶ 26} Despite her reliance on Jones, Appellant has not pointed to any architectural feature at Eastwood Field that is inconsistent with other baseball stadiums. Two photographs, attached to Appellees' motion for summary judgment, depict the walkway in the ballpark and the location behind the grandstand where Appellant stood when she was injured. The photographs illustrate that the walkway leads directly into an unscreened portion of the stadium, but reveal no architectural anomaly upon which Appellant may rely to avoid the general rule announced in Eno, *Page 10 supra. Moreover, Pennsylvania appears to be the only state that has carved out an exception to the limited duty rule and we decline to follow it.
 {¶ 27} The trial court's decision in this case is consistent with Ohio law generally and the rule announced in Eno, supra. Appellant was injured in a baseball stadium during the baseball game. Errant baseballs are a risk, "directly associated with the activity in question,"Eno at 432, 659 N.E.2d 1232. However, unlike the fact pattern inEno, there are no, "attendant circumstances that raise questions of fact whether [Appellant] assumed the risk" in this case. Id. The game was in active play when Appellant chose to leave her seat and move about the stadium.
 {¶ 28} Because the primary assumption of the risk doctrine applies in this case, Appellant's sole assignment of error is overruled, and the decision of the trial court is affirmed.
Donofrio, J., concurs.
DeGenaro, J., concurs. *Page 1