Appellees, Malcolm (individually, appellee) and Mary Ratliff, filed a personal injury and loss of consortium complaint against appellant, Donald Colasurd. The case was tried before a jury which rendered a verdict in favor of appellees, finding appellant seventy-three percent negligent and appellee, Malcolm Ratliff, twenty-seven percent negligent. The jury awarded appellees $136,033.20 in damages for loss of past earnings, loss of future earning capacity, medical bills, pain and suffering, and loss of consortium. The trial court denied appellant's motions for judgment notwithstanding the verdict and alternatively for remittitur or new trial. Appellant appeals from the judgment of the trial court and presents the following assignments of error for review:
 I. THE TRIAL COURT ERRED BY PRECLUDING IN LIMINE DEFENDANT COLASURD FROM INTRODUCING EVIDENCE OR REFERENCING THE ISSUE OF FORESEEABILITY IN THIS PERSONAL INJURY NEGLIGENCE ACTION.
 II. THE TRIAL COURT ERRED BY PRECLUDING DEFENDANT COLASURD FROM TESTIFYING ON THE ISSUE OF FORESEEABILITY OF PLAINTIFF RATLIFF'S ALLEGED INJURY, UNDER THE CIRCUMSTANCES OF THIS CASE.
 III. THE TRIAL COURT ERRED IN FINDING DEFENDANT COLASURD OWED PLAINTIFF RATLIFF A DUTY UNDER THE CIRCUMSTANCES OF THIS CASE.
 IV. THE TRIAL COURT ERRED BY FAILING TO FIND THAT PLAINTIFF RATLIFF ASSUMED THE RISK OF INJURY AS A MATTER OF LAW.
 V. THE TRIAL COURT ERRED WHEN IT FAILED TO FIND AS A MATTER OF LAW THAT THE PROXIMATE CAUSE OF PLAINTIFF RATLIFF'S ALLEGED INJURIES WAS PLAINTIFF RATLIFF'S OWN CONDUCT.
 VI. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT COLASURD'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE AT PLAINTIFFS' CASE AND AT THE CLOSE OF DEFENDANT'S CASE.
 VII. THE TRIAL COURT ERRED IN PERMITTING PLAINTIFFS TO ARGUE TO THE JURY THAT PLAINTIFF RATLIFF IS ENTITLED TO RECOVER LOST WAGES AND LOSS OF EARNING CAPACITY SINCE PLAINTIFFS FAILED TO INTRODUCE THE NECESSARY EVIDENTIARY FOUNDATION TO SUBMIT THIS ISSUE TO THE JURY.
 VIII. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY ON THE ISSUE OF PLAINTIFF RATLIFF'S LOST EARNINGS.
 IX. THE TRIAL COURT ERRED BY INSTRUCTING THE JURY ON THE ISSUE OF ALLEGED AGGRAVATION OF INJURY AND ACCELERATION OF INJURY.
 X. THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT COLASURD JUDGMENT NOTWITHSTANDING THE VERDICT.
 XI. THE TRIAL COURT ERRED BY FALLING TO GRANT DEFENDANT COLASURD'S MOTION FOR A NEW TRIAL.
 XII. THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT COLASURD'S MOTION FOR REMITTITUR.
The origin of the present appeal is an incident that occurred on March 25, 1991, when appellant arrived at his office in the William Green Building at approximately 7:40 a.m., for an 8:00 a.m. meeting. Appellant had a parking spot in the underground parking garage of the building which had approximately forty parking spots, all of which were reserved. Appellant inadvertently left his vehicle running with the keys locked inside. The building was still under construction and appellant had just moved into his office earlier that month. Appellant testified that, once they moved in, there were constant problems, including leaking water whenever it rained.
On the same morning of March 25, appellee and his co-worker, Gregory Moore, arrived at the underground parking garage at approximately 7:30 a.m. Appellee was a sheet metal worker for a Dayton company and had been installing gutters, for the last couple of days, to catch water that had been coming through an expansion joint in the reserved parking area of the garage. Appellee and Moore discovered appellant's running vehicle, notified security and went back to work. Appellee and Moore observed people around appellant's vehicle from time to time and thought the vehicle would soon be shut off.
At approximately 9:00 a.m., appellee was experiencing difficulties breathing due to the fumes, did not feel well and went to the loading dock to take a break. As appellee was sitting on the loading dock, he suffered a stroke. As a result of his stroke, appellee experiences persistent weakness on his right side, including his face, arm and leg, and has speech problems. Dr. Lynch, appellee's family physician, testified at trial that appellee's injuries are attributable to his stroke and showed no significant improvement from the time of the stroke to his last examination in November 1997.
Appellant's first and second assignments of error will be addressed together. In his first assignment of error, appellant asserts that the trial court erred when it sustained appellees' motion in limine that appellant must refrain from suggesting that the law of foreseeability required appellant to foresee that his alleged negligence could cause an individual to have a stroke. In his second assignment of error, appellant asserts that the trial court erred when it sustained, on relevancy grounds, an objection to a question asking appellant if he knew that two workers continued to work in the vicinity of his running vehicle for approximately one and one-half hours. At trial, appellant proffered that his response to the above question would have been that he was not aware of any workers that were in the area.
An order granting a motion in limine is tentative, interlocutory and precautionary. State v. Grubb (1986), 28 Ohio St.3d 199,201. The issuance of a motion in limine alone does not preserve the record on appeal. Id. at 202. When a motion inlimine is sustained, the opposing party must proffer the excluded evidence and have a second, and final, determination by the court as to its admissibility during trial. Id.
202-203. As to the issue of whether the trial court erred when it sustained appellees' motion in limine, appellant has waived this issue as there is no proffer of evidence in the record regarding the issue of whether he could have foreseen a person suffering a stroke. Had this issue not been waived, this argument would be without merit. Under Ohio negligence law, an alleged tortfeasor need not anticipate the particular harm, it is sufficient that an injury was reasonably foreseeable. Oilerv. Willke (1994), 95 Ohio App.3d 404, 412.
Appellant argues that the trial court should have admitted his testimony that he did not know that appellee continued to work in close proximity to his vehicle for one to one and one-half hours. Appellant argues that, under Jeffers v. Olexo
(1989), 43 Ohio St.3d 140, all circumstances of the case are relevant to the determination of foreseeability and that the jury should have had the opportunity to hear what he knew when he found out he had left his vehicle running with the keys locked inside.
A trial court has broad discretion to determine the admissibility of evidence and will not be reversed absent an abuse of discretion. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271. Evidence that is not relevant is not admissible. Evid.R. 402; WUPW TV-36 v. Direct Results Marketing, Inc.
(1990), 70 Ohio App.3d 710, 718. Evidence is relevant when it has any tendency to make the existence of any fact more or less probable. Evid.R. 401.
The elements of a cause of action in negligence are existence of a duty, breach of the duty, and injury resulting therefrom.Mussivand v. David (1989), 45 Ohio St.3d 314, 318. The concept of foreseeability is pertinent to both the elements of duty and of proximate cause. Oiler, at 410.
In Jeffers, the Ohio Supreme Court found that the defendant's alleged negligence could not be the proximate cause of the injury when, under all the circumstances, defendant did not foresee and, acting as a reasonably prudent person, could not have foreseen the consequences of the alleged negligent act.Id. at 144. Thus, in determining foreseeability and, from there, liability, the Supreme Court looked at all of the circumstances to determine whether harm was foreseeable.
Appellant argues that appellee's remaining in the area of appellant's vehicle for one to one and one-half hours is a circumstance that must be considered in determining whether harm was foreseeable. This argument is not persuasive. "In determining whether [defendants] should have recognized the risks involved, only those circumstances which [defendants] perceived, or should have perceived, at the time of their respective actions should be considered." Menifee v. OhioWelding Products, Inc. (1984), 15 Ohio St.3d 75, 77. Appellant was allowed to testify as to the circumstances he perceived at the time of his actions: Appellant testified that he saw no workers in the area of his vehicle when he parked and did not know people were in the area at the time he learned he had left his vehicle running. Whether appellant knew that appellee specifically was working in the garage and remained is irrelevant to the issue of foreseeability. Rather, the issue is whether any reasonably prudent person would have foreseen that anyone would be in the garage in the area of appellant's car. The trial court did not abuse its discretion when it sustained appellees' objection to this testimony.
For the above reasons, appellant's first and second assignments of error are overruled.
Appellant's third, fourth, fifth and sixth assignments of error concern the trial court's denial of appellant's motion for directed verdict at the close of appellees' case and at the close of appellant's case, and will be addressed together.
If the evidence relating to a determinative issue is construed most strongly in the non-moving party's favor, and the court finds that reasonable minds could reach only one conclusion, and that being against the non-moving party on the issue, then the trial court should sustain a directed verdict motion as to the issue. Civ.R. 50(A)(4). When ruling on a directed verdict motion, a court should not consider the weight of the evidence or the credibility of witnesses. Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 284.
In his third assignment of error, appellant asserts that the trial court erred when it found that he owed a duty to appellee. The existence of a duty is a question of law.Mussivand, at 318. Whether a duty exists depends on the foreseeability of the injury. Menifee, at 77. An injury is foreseeable when "a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." Menifee, at 77.
Appellant knew that the underground garage was enclosed and that the loading dock area was busy. Appellant also knew that construction was not finished and that there was a problem with leaking water when it rained. On cross-examination he acknowledged that a running vehicle in the enclosed garage could harm someone. Based on these circumstances, it was foreseeable that any person in the garage, including appellee, might be harmed by the exhaust from appellant's running vehicle. Therefore, this court finds as a matter of law that appellant owed a duty of care to people in the underground garage, including appellee.
Appellant's third assignment of error is overruled.
In his fourth and fifth assignments of error, appellant asserts that the trial court erred when it failed to find as a matter of law that appellee's own conduct was the proximate cause of his alleged injuries.
Proximate cause is an issue of fact and should only be withdrawn from the jury when the factual evidence is so one sided that reasonable minds could only reach a conclusion adverse to the non-moving party. Strother, at 288. Appellant argues that he cannot be liable to appellee, based on the defense of primary assumption of risk and, alternatively, based on the defense of implied assumption of the risk. The trial court found that appellant did not raise the defense of primary assumption of the risk until his motion for new trial and, consequently, determined that he had waived this defense. Alternatively, the trial court concluded that primary assumption of the risk did not apply to the facts of the present case.
Appellant does not dispute the trial court's finding that he did not raise the defense of primary assumption of the risk during the trial. Therefore, the trial court properly found that this defense was waived pursuant to Gallagher v. ClevelandBrowns Football Co. (1996), 74 Ohio St.3d 427, syllabus. In addition, this court agrees with the trial court's finding that the defense of primary assumption of risk does not apply to the present case. Only risks directly associated with the normal activity in question fall within the scope of primary assumption of the risk. Gallagher, at 432. Because it is not a normal activity to leave a vehicle running in an enclosed garage, appellee's decision to remain did not constitute acceptance of an ordinary and inherent risk of being in the garage. Id.
Alternatively, appellant argues that the evidence establishes, as a matter of law, that appellee impliedly assumed the risk of injury and that this conduct is the proximate cause of his injury.
The defense of implied assumption of the risk is distinct from the defense of primary assumption of the risk.Gallagher, at 431. Implied assumption of the risk has been merged with the defense of contributory negligence under Ohio's comparative negligence statute, R.C. 2315.19. Anderson v.Ceccardi (1983), 6 Ohio St.3d 110, 113. Implied assumption of the risk applies to situations in which a plaintiff intelligently acquiesces to a known danger. Anderson, at 113. To the extent assumption of the risk is found, recovery will be diminished. Anderson, at 113; R.C. 2315.19(A)(2) and (C).
The issue on appeal is whether, under the facts, reasonable minds could only find that appellee's negligence in assuming the risk is greater than appellant's negligence.
Although the evidence establishes that appellant was aware of the running vehicle, yet remained in the area of the exhaust for approximately one to one and one-half hours, the evidence also indicates that appellant left when he began to feel ill. Based on the facts of this case, reasonable minds could conclude that appellee's negligence in assuming the risk was less than fifty percent. Therefore, since reasonable minds could reach different conclusions on the extent of appellee's negligence, the trial court did not err in denying appellant's directed verdict motion based on the issue of causation.
For the above reasons, the trial court properly denied appellant's directed verdict motions. Accordingly, appellant's third, fourth, fifth and sixth assignments of error are overruled.
In his seventh and eighth assignments of error, appellant asserts that the trial court erred when it permitted appellees to argue to the jury that they were entitled to recover for lost wages and lost earning capacity, and when the court instructed the jury on the issue of lost earnings. Similarly, appellant argues in his twelfth assignment of error that the trial court erred in overruling his motion for remittitur on the issues of lost past and future earnings. Appellant's tenth and eleventh assignments of error, although addressed separately, also relate to the lost earnings issue.
Although appellant references lost wages generally in those assignments of error, appellant's argument focuses solely upon the award for future lost wages. To the extent appellant attempts to apply the same argument to the issue of past earnings, appellant's contention is unpersuasive due to the conceptual and proof differences between past and future lost wages. Because appellant has not advanced any other argument in support of his contentions regarding past wages, to the extent appellant's seventh, eighth, tenth, eleventh, and twelfth assignments of error concern the award for lost past wages, those assignments of error are overruled. App. R. 12(A)(2); see, also, State v. Timashev (Mar. 4, 1999), Franklin App. No. 98AP-599, unreported (1999 opinions 297) (refusing to resolve assignment of error with insufficient supporting argument).
Regarding the issue of lost future earnings, an award of damages for future wage loss raises two independent evidentiary concerns: (1) whether appellee offered sufficient proof of any future impairment, and (2) whether appellee offered sufficient evidence of the extent of prospective damages flowing from the impairment. In order to recover future damages, including future wage loss, appellee must prove by sufficient evidence that he is reasonably certain to incur such damages in the future. Galayda v. Lake Hosp. Sys., Inc. (1994), 71 Ohio St.3d 421,425. The showing of future earnings loss in a personal injury case therefore involves demonstrating with reasonable certainty, first, that appellee's injury or condition prevents him from attaining his or her pre-injury wage.
The proof required to show future earnings impairment depends on the nature of the appellee's condition. "[Where] the injury is of an objective nature (such as the loss of an arm, leg, or other member) the jury may draw their conclusions as to [future earnings damages] from that fact alone (the permanency of such injury being obvious); whereas there must be expert evidence as to [future damages] or permanency where the injury is subjective in character." See Day v. Gulley (1963), 175 Ohio St. 83,86-87 (discussing future pain and suffering, future medical expenses, and future loss of wages); Corwin v. St.Anthony Med. Ctr. (1992), 80 Ohio App.3d 836, 840-841 (citingDay, supra, and discussing future pain and suffering).
Generally, an "objective injury" means that the injury or condition itself, without more, will provide evidentiary basis for the jury to conclude with reasonable certainty that future damages will probably result. See, e.g., Powell v. Montgomery
(1971), 27 Ohio App.2d 112, 119 (concluding thickening of wrist bone from fractured arm was a subjective injury, requiring expert testimony); Williams v. Noden (Feb. 15, 1995), Summit App. No. 16857, unreported (holding that the jury could not conclude, "based upon common knowledge and experience," that a hernitated disc would cause the disability and prospective damages claimed by the plaintiff, and plaintiff therefore was required to submit expert testimony).
In light of the foregoing, the initial inquiry is whether appellee's condition after his stroke was objective or subjective. Determining that inquiry involves assessing whether the jury could conclude with reasonable certainty that the condition will cause appellee to suffer a future impairment that will give rise to the claimed future lost wages. If the condition is objective in that regard, then appellee was not required to present expert testimony on his future disability. However, if the condition is subjective, such that the condition alone is insufficient to allow the jury to conclude with reasonable certainty that appellee will suffer future disability, then the trial court erred in giving an instruction on prospective damages in the absence of expert testimony on the extent of appellee's disability.
Even if appellee's condition is objective so that appellee proved a future impairment without expert testimony, appellee must satisfy the second element of a future wage loss by proving the extent of that loss. The measure of damages for impairment of earning capacity is "the difference between the amount which the plaintiff was capable of earning before his injury and that which he is capable of earning thereafter."Deyo v. Adjutant General's Dept. (Aug. 16, 1994), Franklin App. No. 93API12-1667, unreported (quoting Hanna v. Stoll [1925],112 Ohio St. 344, 353). Thus, even if appellee successfully demonstrated that his injury or condition will cause future earnings loss, but appellee nevertheless failed to present sufficient evidence to allow the jury to calculate a monetary award for diminished earnings capacity, an instruction on future earnings loss was improper. See, e.g., Rowe v. Rife (May 13, 1986), Miami App. No. 85 CA 5, unreported; Barker v.Sundberg (Oct. 24, 1993), Ashtabula App. No. 92-A-1756, unreported.
Appellant's seventh and eighth assignments of error challenge both prongs of appellee's future damages award. Together they assert the trial court improperly submitted the lost wages issue to the jury in the absence of the necessary evidentiary foundation, noting the testimony of appellee's medical expert and citing cases which address both prongs of a future damages award.
Although appellee presented expert testimony demonstrating that after the stroke he was unable to perform his job as a sheet metal worker, appellee's medical expert was unable to conclude that appellee was permanently unable to work in any capacity, absent a "full evaluation." (Tr. Vol. 3, at 21.) While Mr. Ratliff testified he was unable to work as a sheet metal worker due to his impairment, his testimony alone is insufficient to demonstrate the extent of his inability to work, given the physician's refusal to address the extent of impairment absent further physical evaluation. See Williams v.Noden, supra, (noting that "[w]hen a physician cannot reach a conclusion without the aid of scientific tests, a jury certainly cannot do the same without the testimony of an expert"). Because appellees failed to set forth sufficient evidence to substantiate his claim of diminished future earnings capacity, the award for lost future earnings was not reasonably certain, but speculative. Accordingly, the issue of lost future earnings should not have been submitted to the jury. Appellant's seventh and eighth assignments of error are sustained in part, with regard to future earnings loss. Because the award of future damages must be deducted from the jury's award of damages, appellant's twelfth assignment of error, to the extent it concerns remittitur for future damages, is moot.
In his ninth assignment of error, appellant asserts that the trial court committed reversible error when it instructed the jury on the issue of aggravation and acceleration of injury.
Acceleration of injury refers to a situation when an injury precipitates the arrival of a disabling condition that was bound to occur eventually, but had not manifested itself before the injury. Hess v. United Ins. Co. of Am. (1991), 74 Ohio App.3d 667,673. Aggravation of injury refers to a situation when a pre-existing condition becomes worse due to an injury.Id.
A trial court has a duty to give a requested special instruction when it is pertinent to an issue and correctly states the law. Briere v. Lathrop Co. (1970), 22 Ohio St.2d 166,176.
In the course of instructing the jury on future damages, the trial court instructed the jury that, if it found for appellees, it could not consider any amount of future damages for a pre-existing condition. Rather, the court instructed that a defendant would only be responsible for the extent of the aggravation of injury; that a defendant is not responsible for a pre-existing condition but only acceleration of the condition, and the defendant is liable only for damages proximately caused by the acceleration.
Although appellant contends that the evidence at trial did not establish that Mr. Ratliff's carotid artery disease was aggravated or accelerated by inhalation of carbon monoxide, it was, nevertheless, an issue at trial. Indeed, in some respects, appellant invited the instruction by arguing that appellee would have a stroke, given his medical condition, the only question being when.
During trial, Mr. Ratliff conceded that his existing health problems of high blood pressure, a prior heart attack and artery disease made him more susceptible to a stroke than the average person, but argued that it was the exposure to the carbon monoxide that caused the stroke to happen when it did. Appellant, by contrast, focused on Mr. Ratliff's pre-existing health problems and argued that the carbon monoxide did not contribute to the stroke; that it was coincidence that Mr. Ratliff suffered his stroke when he did.
As the countervailing arguments demonstrate, however, the real issue in the case, whether or not couched in terms of acceleration, was whether carbon monoxide was a cause of appellee's stroke.
Because the medical evidence at trial indicated that appellee's stroke was caused by his exposure to carbon monoxide, we cannot find prejudicial error to appellant, even if the instruction was improperly given, as it stated that appellant was liable only for the damages proximately caused by the aggravation or acceleration for which appellant was responsible. Although appellant nonetheless argues error because appellee did not produce expert testimony apportioning the damages attributable to the alleged aggravation and/or acceleration, appellant had the burden to produce evidence as to the extent of acceleration because acceleration serves to mitigate damages. Larrissey v. Norwalk Truck Lines, Inc.
(1951), 155 Ohio St. 207, paragraph two of the syllabus.
For the above reasons, appellant's ninth assignment of error is overruled.
In his tenth assignment of error, appellant asserts that the trial court erred when it failed to grant his motion for judgment notwithstanding the verdict. The standard for granting a motion for judgment notwithstanding the verdict and for granting a directed verdict are the same. Texler v. D.O.Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677,679.
Appellant asserts three reasons entitling him to a judgment notwithstanding the verdict: absence of duty, lack of probable cause, and insufficient evidence of lost earnings. To the extent appellant's tenth assignment of error relies on the issues of duty, proximate cause, and evidence of past earnings, the assignment of error is overruled, pursuant to our rejection of those arguments in other portions of this opinion. Appellant's argument concerning future wage loss is rendered moot by our disposition of the seventh, eighth, and twelfth assignments of error.
In his eleventh assignment of error, appellant asserts that the trial court erred when it denied his motion for a new trial.
Appellant moved for a new trial, pursuant to Civ.R. 59(A), on the grounds that the judgment was not sustained by the weight of the evidence, that the judgment was contrary to law, and that an error of law occurred at trial. In support of this motion, appellant presents several arguments that this court has considered and rejected earlier in this opinion.
Appellant also argues that the evidence was not sufficient to support the jury's award for loss of past and future earnings and that the jury's verdict on those claims is against the manifest weight of the evidence. Based on the evidence of Mr. Ratliff's income and testimony regarding his inability to work since the time of his stroke, the jury's loss of past earnings award is not against the manifest weight of the evidence.
Because we have held that the issue of future earnings was improperly submitted to the jury, and the $51,830 award for that claim can be severed based upon jury interrogatory number seven, appellant's argument concerning entitlement to a new trial relative to the future earnings issue is moot.
For the above reasons, appellant's eleventh assignment of error is overruled in part and moot in part.
For the foregoing reasons, assignments of error one through six and nine are overruled; assignments of error ten through twelve are overruled in part and moot in part; and assignments of error seven and eight are overruled in part and sustained in part. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part and remanded to the court of common pleas for deduction of the $51,830 award for loss of future earning capacity.
Judgment affirmed in part and reversed in part; caseremanded.
BRYANT, J., and LAZARUS, P.J., concur.
BOWMAN, J., concurs in part and dissents in part.