OPINION
The plaintiff/appellant, Wilma G. Reed ("the appellant"), appeals the decision of the Auglaize County Court of Common Pleas, granting summary judgment on behalf of all of the defendant/appellants and dismissing her complaint. For the following reasons, we hereby affirm in part and reverse in part the judgment of the trial court.
The pertinent facts and procedural history follow. Along with her daughters, the appellant attended a go-kart race in the City of Wapakoneta, Ohio on September 27, 1998. The race was a charity event, entitled "Race for Sight," sponsored by the Wapakoneta Lions Club. Spectators paid no admission fee. The race was being held with the permission of the City of Wapakoneta.
Auglaize Street in Wapakoneta was closed to public traffic for the event. The Lions Club laid out the race course. A four and one half foot fence was erected to separate the sidewalk from the race track. Hay bales were also placed around the track to further protect the public from the racers. All of this was constructed by the Lions Club.
The appellant was initially watching the race from a spectator area on the north side of Auglaize Street. However, near the end of the race, the appellant moved to the south side of the street. Apparently, this area was protected by the orange fencing, but there were fewer hay bales than on the north side of the track.
Defendants/appellees Randy Cassidy, Jr., Jeremy Champion, and David Darbin were driving the go-karts. As the racers rounded a corner onto Auglaize Street, their carts collided. The appellant was allegedly struck by a go-kart that left the track after this collision.
The appellant brought a negligence action against Randy Cassidy and several other racers, the City of Wapakoneta, and the Wapakoneta Lions Club. She also sued her insurance company, Colonial Insurance, for coverage under her uninsured motorist policy. The City of Wapakoneta filed a cross-claim against the Wapakoneta Lions Club. Subsequently, the defendants filed respective motions for summary judgment, all of which were granted. The City of Wapakoneta voluntarily dismissed its cross-claim. The appellant now brings the instant appeal, presenting five assignments of error for our review.
Because the appellant's first, second, fourth, and fifth assignments of error all relate to the same legal issue, we will address them together.
 ASSIGNMENT OF ERROR NO. I The trial court erred by its holding that the Appellant, Wilma Reed, who was standing on a public sidewalk, was barred from recovering for personal injuries from the go-cart drivers, Appellees, Champion, Cassidy, and Darbin, who were engaged in competitive racing on a public street, due to Appellant-Reed's primary assumption of the risk.
 ASSIGNMENT OF ERROR NO. II The trial court erred by holding that the Appellant, Wilma Reed, who was standing on a public sidewalk, was barred from recovering for personal injuries from recovering from the Appellee, City of Wapakoneta, which had permitted competitive racing upon the downtown public streets without exercising any supervision or control and taking no steps to determine the safety of the public, due to Appellant-Reed's primary assumption of the risk.
 ASSIGNMENT OF ERROR NO. IV The trial court erred by holding that Appellant, Wilma Reed, was barred from recovering for her personal injuries from the Appellee-Wapakoneta Lions Club that sponsored, controlled and ran competitive racing upon the public streets, due to Appellant-Reed's primary assumption of the risk.
 ASSIGNMENT OF ERROR NO. V The trial court erred by holding that Appellant, Wilma Reed, was barred from recovering under her uninsured motorists coverage against Appellee-Colonial Insurance Company, due to her primary assumption of the risk when Appellant-Reed, while standing on a public sidewalk, was struck by a motor vehicle.
In all of the preceding assignments of error, the appellant essentially argues that the trial court erred by granting summary judgment on behalf of the defendants, based on the finding that the appellant's claims were barred by the doctrine of primary assumption of the risk. For the following reasons, we agree with the appellant.
In considering an appeal from the granting of a summary judgment, our review is de novo, giving no deference to the trial court's determination.[1] Accordingly, we apply the same standard for summary judgment as did the lower court.[2]
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.[3] The initial burden in a summary judgment motion lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.[4] Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action.[5]
Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial.[6] The nonmoving party may not merely rely on the pleadings nor rest on allegations, but must set forth specific facts that indicate the existence of a triable issue.[7]
The doctrine of primary assumption of the risk applies to risks so inherent in an activity that they cannot be eliminated, even through ordinary care.[8] Because the risk is so attendant to the particular activity, courts hold "that plaintiff has tacitly consented to the risk, thereby relieving defendant of any duty owed to him."[9] Thus, primary assumption of the risk acts as an absolute bar to recovery. Primary assumption of the risk, when applicable, is an issue especially amenable to resolution pursuant to a motion for summary judgment.[10]
The quintessential example of primary assumption of risk are cases involving spectators at baseball games. The rational behind these cases is that
 it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness, that they are liable to be thrown or batted outside the lines of the diamond, and that spectators in positions which may be reached by such balls assume the risk thereof.[11]
The Supreme Court of Ohio has cautioned against applying primary assumption of the risk in all but the most limited circumstances. Only those risks directly associated with the activity in question are within the scope of primary assumption of the risk.[12] In many cases, there are specific circumstances that give rise to a question of fact regarding whether a plaintiff assumed the risk in a particular situation.[13] In such instances, secondary, or implied assumption of the risk applies.[14]
Implied assumption of the risk does not obviate all duty owed to the plaintiff by the defendant.[15] Rather, the plaintiff's appreciation of and acquiescence in a risk that is known or obvious to her acts as a defense against the plaintiff's action.[16] This form of assumption of the risk involves questions of fact which are properly reserved for the jury.[17]
We are not convinced that injury to a spectator is the kind of risk so inherent to the sport of go-kart racing that the appellant can be deemed to have consented to it. The appellant testified that she observed other accidents during go-kart races and that there had, in fact, been several other accidents on the day she was hit. However, she also stated that none of them involved spectators. In fact, only one deponant testified to ever having witnessed a spectator injury.
The appellees point out that the appellant admitted to having seen go-karts leave the tracks on at least five or six other occasions when she attended races in the past. Again, this does not mean that injury to spectators as a result of karts leaving the track is inherent to racing. However, it raises a question of fact as to whether such a risk was obvious to the appellant.
Two of the racers, Randy V. Cassidy, Jr. and Jeremy Champion, also defendants/appellees in this case, testified that there was a dip in the track near the corner by which the appellant was standing at the time of the accident. According to both racers, this dip may have played a role in the collision. The appellant testified that, based on her experience, when go-karts made the turn at the corner of Auglaize Street, they normally went to the outside of the track. Thus, she felt that she was safe standing on the inside of the turn. Indeed, Champion and Cassidy testified that they believed the karts initially went to the outside of the track prior to the accident. In fact, from the testimony of the racers, a very intricate chain of events caused the accident. This is not the type of risk that could be deemed to be within the common knowledge of all spectators. Therefore, there remains a question as to whether the appellant assumed the risk in this particular situation.
In her first assignment of error, the appellant also alleges that the City of Wapakoneta and the Wapakoneta Lions Club were willful, wanton, and reckless by allowing and encouraging illegal competitive racing on public streets. We disagree.
In Fabrey v. McDonald,[18] the Supreme Court of Ohio uses recklessness and wanton misconduct interchangeably. The standard for a showing of wanton misconduct is extremely high.[19] Basically, it amounts to the failure to exercise any care whatsoever.[20] The Ohio State Supreme Court stated, "mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor."[21] In addition, the actor must be conscious that his conduct will in all probability result in injury.[22]
With regards to recklessness, the court further elaborated that an "actor's conduct is in reckless disregard of the safety of others if * * * such risk is substantially greater than that which is necessary to make his conduct negligent."[23]
"Willful misconduct" implies an even more culpable mental state than does wanton or reckless misconduct.[24] "[I]t implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. * * *"[25]
The appellant's entire argument to show willful, wanton, and reckless misconduct on the part of the appellees rests on an allegation that they violated R.C. 4511.251, which prohibits street racing on pubic highways. To begin with, the appellant presents no evidence that this statute was violated. Furthermore, even if the appellees did violate this statute, it would not constitute per se willful, wanton, and reckless misconduct.[26] Because the appellant directs us to no other evidence that would support this allegation, we hold that the City of Wapakoneta and the Wapakoneta Lions Club were not willful, wanton, or reckless as a matter of law.
Accordingly, with regard to the appellant's primary assumption of the risk, the appellant's first, second, fourth, and fifth assignments of error are well-taken and are granted.
 ASSIGNMENT OF ERROR NO. II The trial court erred by holding that the Appellant, Wilma Reed, who was standing on a public sidewalk was barred from recovering for personal injuries from the City of Wapakoneta, which had failed to keep the sidewalks and streets free from public nuisance by permitting competitive racing, due to Appellee-City of Wapakoneta's immunity.
The appellant argues that the trial court improperly found the City of Wapakoneta, a political subdivision, to be immune from liability under the state's sovereign immunity statute. We disagree with the appellant.
R.C. 2744.02 lays out the classification of functions of political subdivisions, their liability, and the exceptions. It states, in part:
 (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to a person or property allegedly caused by any act or omission of the political subdivision in connection with a government or proprietary function.
The appellant provides us with precious little argument regarding this assignment of error, failing even to cite which of the exceptions to sovereign immunity she believes applies to her case. However, based on the argument in her brief, we assume that she feels that exception (B)(3) applies herein. According to R.C. 2744.02(B)(3),
 * * * political subdivisions are liable for death, injury, or loss to a person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *.
The appellant apparently argues that the go-kart race amounted to a nuisance and that, therefore, the City is liable for her injuries pursuant to R.C. 2744.02(B)(3) since they failed to keep their streets and sidewalks free from this nuisance.
The appellant claims both common-law and statutory nuisance. At common law, a nuisance is defined as something that is either obnoxious or offensive to others, or the doing of anything or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights.[27] With regards to statutory nuisance, the appellant raises R.C. 4511.21(B)(2), which mandates that the speed limit in a downtown area is 25 mph, and R.C.4511.251, which prohibits competitive racing on public streets.[28]
The City of Wapakoneta has presented unrefuted evidence the streets were closed to public traffic at the time that the race took place. Therefore, the streets were not "public" at the time of the incident and the appellant's common law and statutory theories are both without merit.
Accordingly, the appellant's third assignment of error is without merit and is hereby denied.
Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse in part and affirm in part the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part.
SHAW, P.J, and BRYANT, J., concur.
[1] Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720.
[2] Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8.
[3] Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995),73 Ohio St.3d 679, 686-87.
[4] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[5] Civ.R. 56(C).
[6] Dresher v. Burt, 75 Ohio St.3d at 293.
[7] Shaw v. J. Pollock Co. (1992), 82 Ohio App.3d 656, 659.
[8] Collier v. Northland Swim Club (1987), 35 Ohio App.3d 35, 37.
[9] Id., at paragraph one of the syllabus; Anderson v. Ceccardi
(1983), 6 Ohio St.3d 110, 114.
[10] Gallagher v. Cleveland Browns (1996), 74 Ohio St.3d 427,433.
[11] Cincinnati Baseball Club Co. v. Eno (1925), 112 Ohio St. 175,180-182.
[12] Gallagher, 74 Ohio St.3d at 432.
[13] Id. at 432.
[14] Id.
[15] Collier, 35 Ohio App.3d at 37.
[16] Wever v. Hicks (1967), 11 Ohio St.2d 230, 234.
[17] Id.
[18] (1994), 70 Ohio St.3d 351, 356.
[19] Id.
[20] Hawkins v. Ivy (1977), 50 Ohio St.2d 114, syllabus.
[21] Roszman v. Sammett (1971), 26 Ohio St.2d 94, 96-97.
[22] Fabrey, supra.
[23] Id., quoting Thompson v. McNeill (1990),53 Ohio St.3d 102.
[24] Phillips v. Dayton Power Light Co. (1994), 93 Ohio App.3d 111,119.
[25] Id. (citations omitted).
[26] Lipscomb v. Lewis (1993), 85 Ohio App.3d 97.
[27] Hunsche v. Loveland (1999), 133 Ohio App.3d 535, 540.
[28] The appellant also cites several other statutes. However, the others were not raised in her motion for summary judgment and will not be considered here.