OPINION
{¶ 1} Plaintiff-Appellant, Joseph B. Hildreth, appeals the judgment of the Hardin County Court of Common Pleas, granting Defendant-Appellee's, Erin Rogers', motion for summary judgment. On appeal, Hildreth asserts that the trial court erred in granting Rogers' motion for summary judgment based upon the doctrine of primary assumption of the risk. Finding that genuine issues of material fact exist, thereby precluding the application of the doctrine of primary assumption of risk, we reverse the judgment of the trial court.
 {¶ 2} In November of 2004, Hildreth initiated a personal injury action against Rogers for injuries he sustained after either falling from or being thrown from the trunk of Rogers' moving vehicle, of which she was driving, in November of 2003. Rogers responded that Hildreth assumed the risk and/or was negligent, and thus any recovery was either completely barred or should be reduced.
 {¶ 3} In November of 2005, both parties were deposed about the incident. It is undisputed that they were in a relationship and living together when the incident occurred; that their relationship was tumultuous, with arguments sometimes escalating to verbal and physical abuse by both parties; that during the early morning of November 2, 2003, the couple got into an altercation after Hildreth arrived home from a party; that both were yelling and calling each other names; that Hildreth pushed some clay jars off of a bookshelf; that Hildreth slapped Rogers across the face; that Rogers stated that she wanted to leave; that Rogers proceeded outside to her vehicle, a Honda Civic DX with a standard transmission and a spoiler on the back; and, that Hildreth followed her outside and jumped onto the back of the vehicle before Rogers started it.
 {¶ 4} However, at this point the parties' recollections of events diverged. On cross-examination during her deposition, Rogers testified that upon leaving she did not take any personal belongings with her, other than her purse, because she was too scared of Hildreth's behavior. She stated that Hildreth had told her that one of his friends had given him drugs at the party and that she believed he was either intoxicated or under the influence of something due to his behavior.
 {¶ 5} Rogers continued that she ran to her vehicle, got inside, and locked it; that, while she attempted to extract her keys from her purse, Hildreth followed her outside, pounded on the driver's side window, and then jumped onto the back of her vehicle; and that she did not pay attention to whether Hildreth said anything to her because she was too scared and thought he might "bust the window out of [her] car and pull [her] out." (Rogers Depo. p. 58).
 {¶ 6} Rogers also testified that, upon starting her vehicle, she backed out of the driveway and started down the road, keeping the vehicle in first gear and traveling between five to ten miles per hour. She stated that she approached a stop sign at State Route 68 and came to a complete stop before turning right.
 {¶ 7} Rogers admitted that she was aware that Hildreth was on the back of her vehicle the entire time she was driving, and that he could have gotten hurt if he fell. She also testified that she intended to stop and let Hildreth off the car after crossing a set of railroad tracks on State Route 68, but that he "fell off, or jumped off, or passed out or something" immediately after crossing the tracks. (Rogers Depo. p. 35). She also noted that she did not witness him go off the back of the vehicle.
 {¶ 8} On recross-examination, Rogers testified that she was not in a hurry because, although she was "terrified, * * * I also have someone on my vehicle and I'm not going to drive like an idiot." (Rogers Depo. p. 65).
 {¶ 9} Conversely, on cross-examination Hildreth stated that he attended a cookout the evening before the incident, where he consumed two or three beers and a shot of tequila. He testified that, following the cookout, he attended another party, but did not consume any alcohol or drugs. However, Hildreth's rehabilitation therapist recorded on December 2, 2003, that Hildreth "report[ed] that he was drinking alcohol heavily the night of his accident. He chased his girlfriend while she was driving, grabbed on to the back of her car, [and] was eventually thrown from the car to the ground." (Defense Ex. A). Hildreth testified that he did not recall making that statement. Moreover, Hildreth stated that the therapist incorrectly wrote that he ran after the vehicle because he was already sitting on it when Rogers started it.
 {¶ 10} Hildreth further testified that when Rogers went outside to her vehicle, he followed her, apologized, and asked her to stay. When she proceeded to get into her vehicle, he banged one time on the back window behind the driver's side window. Hildreth continued that he then "jumped on the back of the car. I told her that we needed to talk this out, she didn't need to leave. I told her I was sorry." (Hildreth Depo. p. 50). He also testified that he jumped on the vehicle to prevent Rogers from leaving because he did not believe that she would move it.
 {¶ 11} Hildreth continued that, once he jumped onto the vehicle, it was a matter of seconds before Rogers started and moved the car. He stated that he did not attempt to get off the vehicle at that time because "it was moving and she put it into gear as soon as she got in." (Hildreth Depo. p. 60). He said that he knew that not attempting to jump off was dangerous at that time, but that he did not have a chance to do so. He later stated that he did not think about the risk of falling off at the time.
 {¶ 12} Hildreth also testified that Rogers traveled at a speed of fifteen miles per hour after backing out of the driveway, and that he secured himself by holding onto the vehicle's rear spoiler. Hildreth further stated that when Rogers approached the stop sign at State Route 68, he could not jump off the vehicle because she came to a rolling stop rather than a complete stop, and that she was traveling at five to ten miles per hour when she came to the stop sign and turned right. He also stated that after crossing the railroad tracks on State Route 68, he did not fall off of the vehicle, but could only remember that he was hitting on her window, telling her to stop, telling her to slow down, and telling her to pull over, because he wanted off.
 {¶ 13} On redirect examination, Hildreth clarified that the vehicle's engine was off when he got on the back of the vehicle; that he was on the vehicle for two or three minutes before Rogers started it; and, that once the vehicle was started he could not have gotten off safely because it never stopped and because Rogers was "driving pretty erratic." (Hildreth Depo. p. 95).
 {¶ 14} On recross-examination, Hildreth admitted that he could not see the speedometer, did not know the distance from the house to the stop sign, did not look at his watch while he was on the vehicle, and that nothing physically prevented him from jumping off of the vehicle. However, Hildreth also testified that when Rogers shifted from reverse to first gear, the movement was too fast for him to jump off, and that if "there was a half of second (Sic.) when I could have jumped I would have, but I could not jump off." (Hildreth Depo. p. 98).
 {¶ 15} In February of 2006, Rogers moved for summary judgment, alleging that Hildreth was barred from any recovery because he primarily assumed the risk of injury by climbing onto the trunk of her vehicle. Hildreth replied that, at most, the secondary assumption of the risk doctrine applied, instead of the primary assumption of the risk doctrine, thereby precluding summary judgment.
 {¶ 16} In March of 2006, the trial court granted Rogers' motion for summary judgment. Specifically, the trial court found:
[T]he case of Cave v. Burt * * * appears to be the morereasoned approach to this matter. In a fact situation verysimilar to the instant case, that Court ruled, ". . . that ridingon a car's trunk was inherently dangerous and the risksassociated with it could not be eliminated." The Fourth DistrictCourt went on to hold that, "No reasonable person could questionthat riding on the trunk of a moving car, even under the mostsafe and guarded conditions, is an inherently dangerousactivity." In that case, as in the instant case, Plaintiffvoluntarily exposed himself to an obvious and known danger andDefendant did not owe any duty to Plaintiff as a matter of law.Plaintiff states that the Cave case is distinguishable on thefacts but this Court is unable to distinguish the same.
 Herein Plaintiff voluntarily placed himself on the trunk ofDefendant's car. Plaintiff had several opportunities to safelyremove himself from such position, but he chose not to do so.Plaintiff's misplaced belief that Defendant would not start thecar and move same with him on it does not in any way place a dutyupon Defendant to protect Plaintiff from his own actions ofplacing himself in an inherently dangerous situation. Therefore,the Court finds that Plaintiff's conduct constituted a primaryassumption of the risk and therefore, as a matter of law,Plaintiff is barred from any recovery against Defendant.
(Judgment Entry pp. 2-3). It is from this judgment that Hildreth appeals, presenting the following assignment of error for our review.
 Assignment of Error THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FORSUMMARY JUDGMENT BASED ON THE DOCTRINE OF PRIMARY ASSUMPTION OFTHE RISK.
 {¶ 17} In his sole assignment of error, Hildreth asserts that the trial court erred in granting Rogers' motion for summary judgment based on primary assumption of the risk. Specifically, Hildreth contends that Rogers owed him a duty to refrain from operating her vehicle until she could do so with reasonable safety, and that she breached this duty. Additionally, Hildreth argues that, because he got on a stationary, unstarted vehicle under the belief that Rogers would not move it, he did not primarily assume the risk of injury. We agree.
 {¶ 18} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distr. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶25, citing State ex rel. Cassels v. Dayton City School Dist. Bd.Of Ed., 69 Ohio St.3d 217, 222, 1994-Ohio-92. Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact; (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made; and, therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); Horton v. HarwickChemical Corp., 73 Ohio St.3d 679, 686-87, 1995-Ohio-286. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356,358-59, 1992-Ohio-95.
 {¶ 19} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. Stateex rel. Burnes v. Athens Cty. Clerk of Courts,83 Ohio St.3d 523, 524, 1998-Ohio-3; see, also, Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 {¶ 20} Three types of assumption of the risk defenses exist: (1) express or contractual assumption of the risk, (2) primary or "no duty" assumption of the risk, and (3) secondary or implied assumption of the risk. Gallagher v. Cleveland Browns FootballCo., 74 Ohio St.3d 427, 431, 1996-Ohio-320. Only primary and secondary assumption of the risk are relevant here.
 {¶ 21} Traditionally, all types of assumption of the risk were a complete bar to recovery. Anderson v. Ceccardi (1983),6 Ohio St.3d 110. However, the Ohio Supreme Court merged secondary assumption of the risk with the contributory negligence defense following the legislature's adoption of the comparative negligence statute, R.C. 2315.19. Id. at 113. Thus, secondary assumption of the risk is no longer a complete bar to recovery, but rather is apportioned among the parties where the plaintiff's negligence is no greater than the negligence of the other parties. Siglow v. Smart (1987), 43 Ohio App.3d 55, 56, citing R.C. 2315.19. Primary assumption of the risk, however, remains a complete bar to recovery. Anderson, 6 Ohio St.3d at 114; see, also, Riley v. Burnup Sims Comtec, Inc. (Sept. 12, 1991), 3d Dist. No. 1-90-113. Therefore, proper resolution of this case hinges upon whether Hildreth primarily assumed the risk of injury by jumping onto Rogers' vehicle.
 {¶ 22} Primary assumption of the risk is "a defense of extraordinary strength." Gallagher, 74 Ohio St.3d at 431. The Ohio Supreme Court noted that a primary assumption of risk defense is different from a typical affirmative defense in a negligence case: "Because a successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law, the defense prevents the plaintiff from even making a prima facie case." Id. at 431-32. The Court went on to state that because primary assumption of risk negates the duty element of a negligence claim, whether a plaintiff primarily assumed the risk is a question of law to be decided by the court, not a question of fact for the jury. Id. at 433, 435.
 {¶ 23} The Court also emphasized that, given the "great impact a ruling in favor of a defendant on primary assumption of risk grounds carries, a trial court must proceed with caution when contemplating whether primary assumption of risk completely bars a plaintiff's recovery." Id. at 432. The Court further elaborated:
only those risks directly associated with the activity inquestion are within the scope of primary assumption of risk, sothat no jury question would arise when an injury resulting fromsuch a direct risk is at issue, meaning that no duty was owed bythe defendant to protect the plaintiff from that specific risk.In many situations, * * * there will be attendant circumstancesthat raise questions of fact whether an injured party assumed therisk in a particular situation. In that case, the doctrine ofimplied assumption of risk, not primary assumption of risk, wouldbe applicable.
Id. Primary assumption of risk applies when the activity "involves such obvious and unavoidable risks that no duty of care attaches." Cave v. Burt, 4th Dist. No. 03CA2730, 2004-Ohio-3442
at ¶ 15, citing Gallagher, supra. Examples of such activity have included "attempting to remove a manhole cover with a pick from an elevated area, * * * cho[osing] to attempt to cross railroad tracks even though overpass bridges were within blocks in either direction of the area where the public could cross safely, engag[ing] in rope swinging, `bungee bouncing'" Cave,
supra, (internal citations omitted), and attending baseball games. See Cincinnati Baseball Club Co. v. Eno (1925),112 Ohio St. 175.
 {¶ 24} In the case sub judice, the trial court relied upon the Cave opinion when it granted summary judgment in favor of Rogers. The plaintiff in Cave, a high school student, rode on the trunk of another student's vehicle in order to transport baseball equipment. When the vehicle began moving, the plaintiff fell off and was injured. He sued the student who was driving, as well as the school. The trial court granted summary judgment in favor of the driver and the school, finding that the plaintiff primarily assumed the risk. The Fourth District affirmed, finding that "riding on a car's trunk lid * * * is inherently dangerous and the risks associated with it cannot be eliminated."2004-Ohio-3442, at ¶ 19.
 {¶ 25} We find that the facts in the instant case are distinguishable from those in Cave. Unlike the student inCave, who intended to get onto his fellow student's vehicle to ride on it, Hildreth testified that he did not get on Rogers' vehicle with the expectation that she would move it, but to keep her from starting and moving the vehicle. Even if, as the trial court noted, Hildreth's belief that Rogers would not leave was mistaken, a genuine issue of material fact still exists as to whether or not Hildreth voluntarily assumed the risk of riding on the vehicle so as to relieve Rogers of any duty she owed him. See, e.g., Eno, 112 Ohio St. 175 at para. two of syllabus (finding that while a spectator at a baseball game primarily assumes the risk of being struck by a ball during the course of a game, a spectator injured by a ball hit by a player practicing near the stands during intermission raised genuine issues of material fact that may support a contributory negligence defense, but renders primary assumption of risk inapplicable).
 {¶ 26} Moreover, we find the Eight District's opinion inBooze v. Amans (Mar. 27, 1997), 8th Dist. No. 70664, more persuasive and on point. In Booze, the plaintiff suspected that her boyfriend, the defendant, was having an affair. She went to the alleged other woman's home, where she spotted her boyfriend's truck. As her boyfriend drove away, she passed him, stopped her vehicle in front of him, and walked toward his truck. She claimed that he stopped the truck and she reached to open the passenger door. At this point, her boyfriend locked the door and sped away, running over her leg. Her boyfriend claimed that she screamed at him, ran toward his truck, hit his truck repeatedly, and hung onto the door handle. He stated that he never stopped the truck. The trial court granted summary judgment to her boyfriend. The Eighth District reversed, finding that her boyfriend owed her a duty to operate his car in a reasonably safe manner. Id., citing R.C. 4511.38 and Stoops v. Youngstown Suburban Transp. Co.
(1929), 121 Ohio St. 437. The Eight District found that, viewing the evidence most favorably for the plaintiff, it could not be said that she "encountered any risk in attempting to open the door" while the vehicle was stopped. Id. Thus, the Court stated that, in light of the factual dispute, whether the defendant violated his duty to the plaintiff had to be decided by a jury.
 {¶ 27} Likewise, viewing the evidence in a light most favorable to Hildreth, we cannot say that he voluntarily encountered any risk by jumping on the trunk of Rogers' stationary vehicle if it was in fact not moving. Furthermore, R.C. 4511.38, which mandates that "No person shall start a vehicle, * * * which is stopped, standing, or parked until such movement can be made with reasonable safety," establishes that Rogers owed a duty to Hildreth. Given Hildreth's testimony that he apologized and asked Rogers to stay and work things out, and Rogers' conflicting testimony that she could not hear him and was afraid, whether she breached that duty is a material question of fact precluding summary judgment.
 {¶ 28} Additionally, the trial court found that Hildreth had several opportunities to safely remove himself from Rogers' vehicle, but chose not to do so. However, a review of the evidence again reveals conflicting testimony. Rogers stated that she steadily drove between five and ten miles per hour, while Hildreth stated that she drove at least fifteen miles per hour and drove erratically. Rogers testified that she stopped after she backed out of the driveway before shifting into first, and that she made a complete stop at the stop sign at the State Route 68 intersection. Hildreth testified that Rogers shifted gears and revved the engine too quickly for him to jump off, that she did not make a complete stop at the stop sign, and that she never slowed enough for him to safely jump off.
 {¶ 29} Based on the conflicting evidence, we find that genuine issues of material fact exist regarding whether Hildreth assumed the risk and whether Rogers breached a duty, thereby precluding the trial court's application of the doctrine of primary assumption of risk.
 {¶ 30} Accordingly, Hildreth's assignment of error is sustained.
 {¶ 31} Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment Reversed and Cause Remanded.
 Bryant, P.J. and Shaw, J., concur.