THE STATE, EX REL. SIX, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

(No. 83AP-485—Decided July 24, 1984.)

*Clayman & Jaffy Co., L.P.A.,* Stewart R. Jaffy and *John F. Livorno,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Bradley J. Finn,* for respondents Industrial Commission and Bureau of Workers' Compensation.

*Alexander, Ebinger, Fisher, McAlister & Lawrence, Adele E. O'Conner* and *Gregory W. Swart,* for respondent Southern Ohio Coal Company.

STRAUSBAUGH, J. Relator Dorothy Six brings this action in mandamus seeking to compel respondent Industrial Commission to award her additional benefits for the violation by respondent Southern Ohio Coal Company of a specific safety requirement.

The deceased, James Six, was killed on May 5, 1978 while in the course of his employment with Southern Ohio Coal Company ("SOCC"). He died as a result of severe injuries suffered in the cave-in of an underground coal mine. As alleged by his widow (relator), the deceased was removing temporary supports in the No. 15 entry of the mine, in an area of unsupported roof, when the cave-in occurred, crushing him.

Relator filed a claim for death benefits with the Bureau of Workers' Compensation which was subsequently allowed by the Industrial Commission. On March 11, 1980, relator filed an application for an additional award of benefits for the violation of a specific safety requirement. It was relator's contention that her husband's death resulted from a violation of the specific safety requirements found in R.C. 4153.33 and 4153.35, concerning the removal of temporary roof supports. In January 1982, the application was denied by the Industrial Commission on the ground that the commission did not have jurisdiction to hear the application. Relator then filed a motion for rehearing of her application which was denied by the Industrial Commission because the motion failed to indicate any new and additional proof not previously considered, nor did it indicate that the commission's previous order was based upon an obvious mistake of fact.

On May 26, 1983, relator filed this action in mandamus claiming that the order of the Industrial Commission denying her application for an additional award, based upon the violation of a specific safety requirement, was arbitrary, capricious, unlawful, and constituted a gross abuse of discretion. In response to relator's complaint, SOCC argues that relator's application was properly denied because R.C. 4153.33 and 4153.35 do not constitute specific safety requirements under Section 35, Article II, Ohio Constitution. Respondent Industrial Commission has also filed an answer brief in response to relator's complaint; however, the commission admits that it did have jurisdiction to consider the merits of relator's application and that a limited writ should be issued remanding the matter to the commission to consider whether a violation of the specific safety requirements found in R.C. 4153.33 and 4153.35 actually occurred.

Section 35, Article II, Ohio Constitution, states in pertinent part as follows:

"* * * Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employes, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; and for the purpose of such investigations and inquiries it may appoint referees. * * *"

In order for a claimant to qualify under Section 35, Article II, Ohio Constitution, it must be determined that the order or enactment involved constitutes a "specific requirement." As set forth in the second paragraph of the syllabus of State, ex rel. Trydle, v. Indus. Comm. (1972), 32 Ohio St. 2d 257 [61 O.O.2d 488]:

"Failure of an employer to comply with a requirement does not justify an additional award unless the requirement (1) was enacted either by the General Assembly or by an order of the Industrial Commission, and (2) the requirement is specific as opposed to general and (3) the requirement is for the protection of the lives, health, or safety of employees."

Although SOCC argues otherwise, the fact that the requirement is found in a statute and not in an Industrial Commission rule does not remove it from the confines of Section 35, Article II, Ohio Constitution. See State, ex rel. Kanter Corp., v. Stringer (1981), 67 Ohio St. 2d 8 [21 O.O.3d 5]. Here, relator relies upon two sections from R.C. Chapter 4153 dealing with construction and maintenance of mines. R.C. 4153.33 provides as follows:

"Each operator shall carry out on a continuing basis a program to improve the roof control system of each coal mine and the means and measures to accomplish such system. The roof and ribs of all active underground roadways, travelways, and working places shall be supported or otherwise controlled adequately to protect persons from falls of the roof or ribs. A roof control plan and revisions thereof suitable to the roof conditions and mining system of each coal mine and approved by the chief of the division of mines shall be adopted and set out in printed form on or before January 1, 1977. The plan shall show the type of support and spacing approved by the chief. Such plan shall be reviewed periodically, at least every six months by the chief, taking into consideration any falls of roof or ribs or inadequacy of support of roof or ribs. No person may proceed beyond the last permanent support unless adequate temporary support is provided or unless such temporary support is not required under the approved roof control plan and the absence of such support will not pose a hazard to the miners. A copy of the plan shall be fur-

nished to the chief or his authorized representative and shall be available to the miners and their representatives.

"No person shall refuse or neglect to comply with this section."

R.C. 4153.35 reads, in pertinent part, as follows:

"The chief of the division of mines shall approve roof control plans on a mine-by-mine basis in accordance with the criteria or specifications set forth in this section. Additional measures may be required. Roof control plans which do not conform to these criteria or specifications may be approved if the operator satisfies the chief that the resultant roof conditions will provide no less protection to the miners.

"(* * *

"(H) Any operator who intends to recover roof supports shall include a detailed plan for such recovery in the roof control plan. The following criteria apply to recovery procedures:

"(1) Recovery shall be done only under the direct supervision of a general mine foreman, mine foreman, or section foreman.

"(2) Except where circumstances preclude such assignment, only experienced miners shall be assigned to such work.

"(3) The person supervising recovery shall make a careful examination and evaluation of the roof and designate each support to be recovered.

"(4) Supports may not be recovered in the following areas:

"(a) Where roof fractures are present or there are other indications of the roof being structurally weak;

"(b) Where any second mining has been done;

"(c) Where torque readings on roof bolts or visual observations of conventional support indicate excessive loading.

"(5) Two rows of temporary supports on not more than four foot centers, lengthwise and crosswise, shall be set across the place, beginning not more than four feet in by the support being recovered. In addition, at least one temporary support shall be provided as close as practicable to the support being recovered.

"(6) Temporary supports used may not be recovered unless recovery is done remotely from under roof where the permanent supports have not been disturbed and two rows of temporary support, set across the place on four foot centers, are maintained at all times between the workmen and the unsupported area.

"(7) No one may be permitted to enter any area from which supports have been recovered.

"(8) Entrances to the areas from which supports are being recovered shall be marked with danger signs placed at conspicuous locations. The danger signs will suffice as long as further support recovery work is being done in the area. If the recovery work is completed or suspended for three or more days, the areas shall be barricaded."

In order to qualify as a specific requirement, under *Trydle, supra,* it is essential that the statute plainly apprise the employer of his legal obligations toward his employees. A specific requirement is one which demands that some particular and definite act or thing be done. *State, ex rel. Holdosh,* v. *Indus. Comm.* (1948), 149 Ohio St. 179 [36 O.O. 516]. It must require more than just a general course of conduct or general duties.

It is clear that the requirements of both R.C. 4153.33 and 4153.35 do not operate merely as conditions precedent to the operation of the coal mine or for certification, but as a means of ensuring the lives, health, and safety of the miners employed in the mine. The purpose of a roof control plan is to ensure that the workplace in the mine is supported or controlled adequately to pro-

tect persons from falls of the roof and ribs. R.C. 4153.33. The specific provisions of a roof control plan promulgated under R.C. 4153.33 and 4153.35 provide a clear mandate as to the duties of each operator in relation to the support and maintenance of the mine roof. Furthermore, R.C. 4153.46 provides that the chief of the division of mines may enjoin or restrain any owner, lessee, or agent from operating a mine for failing to maintain such mine in accordance with R.C. Chapter 4153. In addition, those who knowingly violate any section of R.C. Chapter 4153 are guilty of a minor misdemeanor. R.C. 4153.99. Thus, it is clear from the language of the statutes that a roof control plan adopted and approved under R.C. 4153.33 and 4153.35 operates as a specific safety requirement for the protection of the safety and health of the mine employees from any fall or collapse of the mine ceiling. Any violation of a plan promulgated under R.C. 4153.33 and 4153.35, or the failure to obtain approval by the Chief of the Division of Mines of a roof control plan, will give rise to an additional award under Section 35, Article II, Ohio Constitution, for violation of a specific safety requirement. There is no indication in the record that SOCC was excused from conforming with R.C. 4153.33 in regard to allowing workers to proceed beyond the last permanent support without providing any adequate temporary support, or that SOCC was allowed to ignore the restrictions found in R.C. 4153.35(H).

SOCC also contends that the Ohio mining laws, found in R.C. Chapter 4153, are to be exclusively administered, interpreted, and enforced by the Division of Mines of the Department of Industrial Relations and that the Industrial Commission has no authority to interpret or enforce them. However, as is clearly stated in Section 35, Article II, Ohio Constitution, the Industrial Commission is vested with the authority to determine whether or not any injury, disease, or death resulted from the failure of the employer to comply with *"any* specific requirement for the protection of the lives, health or safety of employees, enacted by the General Assembly * * *."* The statute itself need not confer such authority upon the Industrial Commission. Under the circumstances, the Industrial Commission is under a legal duty to evaluate relator's application, and relator has a legal right to a determination by the commission as to whether a violation of R.C. 4153.33 and 4153.35 did occur, and whether that violation was the proximate cause of her husband's death. Accordingly, a limited writ of mandamus will be granted to the extent that the order of August 4, 1981, denying relator's application, be vacated and that respondent Industrial Commission be required to evaluate relator's application and determine if her husband's death was the result of a violation of the specific safety requirements found in R.C. 4153.33 and 4153.35.

*Writ granted.*

WHITESIDE and NORRIS, JJ., concur.