{¶ 1} Appellant Laurie Seiler appeals the trial court's granting of summary judgment in favor of defendant-appellee Donald Martens Sons Ambulance Service, Inc. ("Martens").[1] She assigns the following two errors for our review:
 "I. The trial court erred in granting summary judgment to defendant-appellee since there existed genuine issues of material fact to be decided by a jury."
 "II. The judgment of the trial court is contrary to law."
 {¶ 2} Having reviewed the record and pertinent law, we reverse the decision of the trial court and remand for proceedings consistent with this opinion. The apposite facts follow.
 {¶ 3} Seiler, a nurse at Southwest General Hospital, sued Martens for physical injuries she sustained when she assisted a Martens' employee with moving a hospital patient from a stationary chair to a wheelchair. Martins' ambulance driver, Karen Dedor, arrived at Southwest General Hospital to transfer a patient to a nursing home. Dedor needed assistance in moving the 200 pound patient, who was also recovering from hip replacement surgery.
 {¶ 4} Dedor asked Seiler to assist in moving the patient. Dedor and Seiler each stood on either side of the patient and lifted her under her arms. According to Seiler, as they pivoted to place the patient into the wheelchair, Dedor let go of the *Page 4 
patient, causing Seiler to bear the entire weight of the patient. Seiler also stated that the wheelchair was not locked, which caused her to have to hold the patient until the chair was locked.
 {¶ 5} Seiler claims she strained her neck and spine because of Dedor's negligence. Seiler received workers' compensation from Southwest General Hospital for these injuries. However, she also sought additional compensation from Martens.
 {¶ 6} Martens filed a motion for summary judgment alleging that the primary assumption of the risk and loaned servant doctrines barred Seiler's claim. The trial court granted the motion without opinion.
 Standard of Review {¶ 7} Seiler's assigned errors will be addressed together because they both contend summary judgment was improperly rendered.
 {¶ 8} We review an appeal from summary judgment under a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[3] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence *Page 5 
most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[4]
 {¶ 9} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[5] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[6]
 Primary Assumption of the Risk {¶ 10} Primary assumption of the risk is essentially a principle of no duty owed to the injured plaintiff.[7] "Because a successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law, the defense prevents the plaintiff from even making a prima facie case."[8]
 {¶ 11} Under primary assumption of the risk, a defendant has no duty to protect against certain risks that are so inherent in an activity that those risks cannot be eliminated.[9] However, "only those risks directly associated with the activity in question are within the scope of primary assumption of the risk * * *."[10] Thus, to be *Page 6 
covered under the doctrine, the risk must be one that is so inherent to the activity that it cannot be eliminated.[11] Where the risk is not one that is inherent, the doctrine of primary assumption of the risk does not apply, and, instead, ordinary negligence standards are used.[12]
 {¶ 12} "Because of the great impact a ruling in favor of a defendant on primary assumption of the risk grounds carries, a trial court must proceed with caution when contemplating whether primary assumption of the risk completely bars a plaintiff's recovery."[13]
 {¶ 13} In the instant case, we conclude Seiler's agreement to assist Dedor did not create a situation where she assumed the risk of Dedor's negligent conduct. "One does not by participating in an activity assume the risk of any injury caused by another participant's failure to observe the rules of the event."[14] According to Seiler, Dedor inexplicably let go of the patient as they attempted to pivot her into the chair, leaving Seiler to carry the full weight of the patient. Dedor also failed to lock the wheelchair, further complicating the move. According to Seiler this violated the normal procedure used in moving a patient. That is, two people hold the patient at all times, and the wheelchair is locked prior to commencing the move. *Page 7 
 {¶ 14} Thus, the moving of heavy patients by two trained professionals does not carry the inherent risk of injury when performed properly. The cause of the injury was Dedor's negligence. Dedor does not contest the fact that she let go of the patient or failed to lock the wheelchair, as she claims to have no recollection of the events.
 {¶ 15} The cases cited by Martens are distinguishable because the risks in those cases were obviously inherent to the activity.[15] The instant case is similar to the Second District case of Hardy v.Hall[16] In Hardy, the plaintiff, who was assisting the defendant trim a tree, fell from the tree. The trial court concluded the risk of falling from the tree was an inherent risk of trimming a tree; therefore, primary assumption of the risk prevented recovery. However, on appeal, the court reversed the trial court, stating:
 "Hardy's injuries clearly resulted from his fall, but the fall itself resulted from Hardy's being struck by a branch or branches of the tree top. According to Hardy's claim, that was a proximate result of *Page 8 
Hall's failure to pull the tree top away with the ropes attached to his truck, as the two men had planned and agreed. * * * Hall's failure was not, at least according to their plan, a regular feature of the activity concerned, such that a risk it created was directly associated with it. One does not by participating in an activity assume the risk of any injury caused by another participant's failure to observe the rules of the event. Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84."
 {¶ 16} Likewise, in the instant case, Seiler's injuries were not an inherent risk of moving a patient, but were caused by Dedor's failure to comply with normal procedures in moving a patient. This is not a case where Seiler voluntarily assisted a lay person in moving the patient. Seiler had a right to rely on the fact that Dedor, as an employee of Martens, was trained regarding how to move patients. Therefore, we conclude summary judgment based on primary assumption of the risk was improper and ordinary negligence standards apply.
 Loaned Servant {¶ 17} Seiler also argues that summary judgment based on the loaned servant doctrine advanced by Martens was improper. We agree.
 {¶ 18} The loaned servant doctrine provides that, "when one employer lends his employee to another for a particular employment, the employee, for anything done in that employment, must be dealt with as the employee of the one to whom he has been lent, although he remains the general employee of the loaning employer."[17] In determining whether the borrowed employee has become a loaned servant of a party other than his general employer, the inquiry should focus on the *Page 9 
question of control, that is, whether the general employer has retained direction and control over the employee, or whether, with respect to the particular act or acts resulting in tort liability, the control of the employee has passed to the borrowing employer "with reference not only to the result reached but to the method of reaching it."[18]
 {¶ 19} Therefore, whether Dedor is a loaned servant is dependent on the control Southwest General Hospital exercised over her. Although Dedor could not remove the patient without the hospital's approval and the patient's charts, Southwest General Hospital did not direct how Dedor was to move or transport the patient. Moreover, even though Dedor contends otherwise, it is not clear that Dedor could not remove the patient without assistance from a nurse. Seiler testified that Dedor initially told her she was waiting for a Martens' employee to help her move the patient. Seiler also believed she could have refused Dedor's request for help.
 {¶ 20} We do not agree that the case of Valentine v. Walker FeilbachFuneral Home[19] cited by Martens, is determinative of the case herein. In that case, there was testimony regarding the control exercised by the hospital physician over the ambulance driver. That is, the physician, who rode in the ambulance with the patient, could direct the driver to pull over or activate his siren. Moreover, theValentine court found the testimony created an "issue of fact which was properly *Page 10 
determined by the jury." Likewise, in the instant case, we conclude the evidence presented creates an issue of fact regarding whether Dedor was a loaned servant.
 {¶ 21} Also, assuming Dedor was a loaned servant, there remains the issue of fact regarding whether she was properly trained by Martens. Seiler stated that because of Dedor's inappropriate actions, she believed Dedor was not properly trained and asked Dedor if she was new. Dedor responded that although she had moved patients before, she was a new employee of Martens. In her deposition, Dedor testified she had worked for Martens for approximately five months prior to the incident. If Dedor were not properly trained, Martens could be liable for its own negligence in loaning an "unqualified servant."[20]
 {¶ 22} Therefore, based on the record before us, an issue of fact remains regarding whether Dedor was in fact a loaned servant, and whether she was properly trained by Martens. Thus, summary judgment was improperly entered. Accordingly, Seiler's first and second assigned errors are sustained.
Judgment reversed and remanded for proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee her costs herein. *Page 11 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and CHRISTINE T. MCMONAGLE, J., CONCUR
[1] Seiler filed a motion to amend her complaint to add Karen Dedor as a defendant. The trial court denied the motion because Seiler was aware of Dedor's name prior to filing the original complaint.
[2] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[3] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[4] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[6] Id. at 293.
[7] Gallagher v. Cleveland Browns (1996), 74 Ohio St.3d 427, 431,1996-Ohio-320. See, also, Gentry v. Craycraft, 101 Ohio St.3d 141, 144,2004-Ohio-379, citing Prosser Keeton, The Law of Torts (5th Ed. 1984) 496, Section 68.
[8] Gallagher, supra at 431-432.
[9] See, e.g., Gallagher, supra; Anderson v. Ceccardi (1983),6 Ohio St.3d 110, 114.
[10] Gallagher, supra at 432.
[11] See Westray v. Imperial Pools and Supplies (1999),133 Ohio App.3d 426, 432; Marckel v. Raceway Park, Inc,. 6th Dist. No. L-02-1361, 2003-Ohio-3989.
[12] See, Gallagher, supra, at 432; Pope v. Willey, 12th Dist. No. CA2004-10-077, 2005-Ohio-4744, at]}12-16.
[13] Gallagher, supra, at 432.
[14] Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84.
[15] Fulton v. McCarthy Brothers Co. (July 25, 1995), Cuyahoga App. No. 69900 (plaintiff was injured while engaging in obviously risky behavior by attempting to remove a manhole cover with a pick while standing on a ladder); Gum v. Cleveland Electric Illum. Co.(Feb. 13, 1997), Cuyahoga App. No. 70833 (plaintiff was injured as he grabbed electrical lines to prevent his falling off a roof; working around electrical wires carries obvious inherent risks); Miljovic v. GreaterCleveland Reg. Transit Auth. (Oct. 12, 2000) Cuyahoga App. No. 77214 (plaintiff crossed over busy RTA tracks although overpass bridges were within blocks in either direction of the area where the public could cross safely); Pinks v. Lowe's Home Centers, Inc. (N.D. Ohio, 2003), Case No. 3:01, CV 7341(plaintiff was injured while voluntarily assisting one of the defendant's employees in retrieving several interior doors that were located on an upper shelf; court concluded that common sense dictates that a person may be injured when doors are lowered from an upper shelf by a person standing on a rolling staircase/ladder or forklift, to a person on the ground.)
[16] 2nd Dist. No. 19751, 2003-Ohio-4978.
[17] Halkias v. Wilkoff Co. (1943), 141 Ohio St. 139, paragraph four of the syllabus.
[18] Cincinnati Ins. Co. v. Continental Ins. Co. (Dec. 6, 1995), 1 Dist. Nos. C-940884, C-940890.
[19] (Mar. 6, 1981), 6th Dist. No. L-80-054.
[20] Sanders v. Mt. Sinai Hospital (1985), 21 Ohio App.3d 24 citing to Restatement of the Law 2d, Agency (1958), Section 213, Comment d;Becken v. Manpower, Inc. (C.A.7, 1976), 532 F. 2d 56, 58; Colwell v.Oatman (1973), 32 Colo. App. 171, 510 P.2d 464. *Page 1